JUNTA DE RELACIONES DEL TRABAJO DE PUERTO RICO, peticionaria, *v.* MANUEL ACEVEDO ROSARIO, querellado.

Número 40.
*Sometido:* 11 de mayo de 1955. *Resuelto:* 28 de julio de 1955.

*Hon. Secretario de Justicia José Trías Monge, Aurelio Torres Braschi Secretario de Justicia Auxiliar, y Ramón Acevedo*

*Oliveras* y *Eduardo Álvarez de la Vega,* abogados de la peticionaria; *Ramón H. Vargas,* abogado del demandado.

PER CURIAM: La Junta de Relaciones del Trabajo de Puerto Rico([1]) determinó mediante procedimiento iniciado a instancias de la Unión Local Núm. 65 del Barrio Campo Alegre de Hatillo, que el querellado Manuel Acevedo Rosario cometió prácticas ilícitas del trabajo en violación del art. 8(1) (*a*) y (*c*) de la Ley de Relaciones del Trabajo de Puerto Rico.([2]) Las violaciones al art. 8(1) (*a*) consistieron en (1) haberle indicado a varios obreros de su finca, por conducto de su empleado Juan Ramos García en o allá para el 8 de enero de 1951, que si no firmaban una carta repudiando la unión, no les daría trabajo en sus fincas y haciendo que algunos de ellos firmaran dicha carta; (2) haber manifestado allá para el 22 de enero de 1951 y en presencia de varios obreros de su finca, que no firmaría una estipulación en que se renovaba un convenio colectivo, porque no quería saber de uniones; (3) haber ayudado a varios de sus obreros, por mediación de su empleado Reinaldo Martínez, a escribir una carta repudiando la unión.

---

([1]) En lo sucesivo nos referiremos a ésta meramente como "la Junta."

([2]) La Ley de Relaciones del Trabajo de Puerto Rico lo es la núm. 130 de 8 de mayo de 1945 (pág. 407), según fué enmendada por la Ley núm. 6 de 7 de marzo de 1946 (pág. 19). En su art. 8, incisos (1) (*a*) y (*c*) dispone:

"(1) Será práctica ilícita de trabajo el que un patrono, actuando individualmente o concertadamente con otros:

"(a) Intervenga, restrinja, ejerza coerción o intente intervenir, restringir o ejercer coerción con sus empleados en el ejercicio de los derechos garantizados por el art. 4 de esta Ley.

". . . . . . . . .

"(c) Estimule, desaliente o intente estimular o desalentar la matrícula de cualquier organización obrera mediante discriminación al emplear, despedir o en relación con la tenencia de empleo u otros términos o condiciones de empleo, incluyendo un paro patronal; *Disponiéndose,* que nada de lo aquí contenido prohibe a un patrono hacer un convenio de afiliación total o de mantenimiento de matrícula con cualquier organización obrera no establecida, mantenida o ayudada por acción alguna definida en esta Ley como práctica ilícita de trabajo, si dicha organización obrera representa una mayoría de los empleados en una unidad apropiada con facultad para la contratación colectiva."

La violación al art. 8(1) (c) consistió en negarse a emplear a 18 obreros, con el propósito de desalentar la matrícula de una organización obrera.

Como consecuencia de ello, en 2 de octubre de 1953, la Junta dictó una orden dirigida al querellado requiriéndole para que cesara y desistiera de cometer dichas prácticas ilícitas y tomara cierta acción afirmativa que la Junta consideró efectuaba los propósitos del estatuto. Acude ahora la Junta ante nos en solicitud de que pongamos en vigor la orden de referencia, acogiéndose así a lo dispuesto en el art. 9(2) (a) de nuestra Ley de Relaciones del Trabajo. El querellado se personó en autos para oponerse a ello y suscita las cuestiones que pasamos a discutir en seguida:

I

"Erró la Junta al concluir a base de la evidencia presentada que los actos de Juan Ramos (García) le eran imputables al querellado Manuel Acevedo Rosario."

■■ La Junta imputó responsabilidad al querellado por ciertas manifestaciones que hizo Juan Ramos García, empleado suyo, a un grupo de obreros que solicitaron trabajo en la finca de aquél. Dichas manifestaciones fueron al efecto de que los obreros no serían empleados a menos que firmaran un documento repudiando la unión. Se basó la Junta para así decidir en que Juan Ramos García era un empleado de supervisión y en que, por lo tanto, sus actuaciones eran imputables al querellado, a la luz de lo dispuesto por el art. 2(2) de nuestra Ley.(³) *Cf.* 2 Labor Law Report, sec. 3730, pág. 4024.

---

(³) El art. 2(2) de la Ley 130, según ha sido enmendado, dispone:

"El término 'patrono' incluirá ejecutivos, supervisores y a cualquier persona que realizare gestiones de carácter ejecutivo en interés de un patrono directa o indirectamente, pero no incluirá, excepto en el caso de las instrumentalidades corporativas del Gobierno de Puerto Rico como más adelante se definen, al Gobierno ni a ninguna subdivisión política del mismo; *Disponiéndose,* que incluirá, además, a todo individuo, sociedad u organización que intervenga a favor de la parte patronal en cualquier disputa obrera o negociación colectiva."

Nuestra Ley de Relaciones del Trabajo no contiene definición alguna del término *supervisor* (superintendente). Tampoco la hemos encontrado en nuestra jurisprudencia interpretándola. No obstante, los casos bajo la Ley Nacional de Relaciones del Trabajo—29 U.S.C.A., secs. 151 et seq.— arrojan bastante luz sobre el particular. Hasta que se le enmendó en 1947, dicha ley tampoco contenía definición alguna del término *supervisor*.([4]) Con anterioridad a dicha enmienda, la Junta Nacional decidió que eran empleados *supervisores* aquéllos que tenían el poder de emplear y despedir a otros empleados, o de hacer recomendaciones al efecto, o de recomendar aumentos de sueldo, y aquéllos que tenían el deber de asignar trabajo, de hacer que se observen las reglas de disciplina o de mantener el ritmo de producción. Véanse Ludwig Teller, *Labor Disputes and Collective Bargaining*, ed. 1940, vol. 2, sec. 350, págs. 933, 935–36 y casos en ellas citados. El factor determinante para catalogar a un empleado como *supervisor* era que la naturaleza de su trabajo lo identificara mayormente con la gerencia y no con los empleados ordinarios. Véase ob. cit. vol. 2, sec. 350, pág. 936.

En el año 1947 la Ley de Relaciones Obrero-Patronales (Ley Taft-Hartley) enmendó la Ley Nacional de Relaciones del Trabajo y le incorporó a ésta la siguiente definición del término *supervisor:*

"El término 'supervisor' (superintendente) significa cualquier individuo con autoridad, en interés del patrono, para emplear, trasladar, suspender, dejar cesante, retirar, ascender, despedir, asignar, remunerar o disciplinar a otros empleados, o con autoridad para darles órdenes, arreglar sus quejas, o para recomendar de manera eficaz la acción que proceda, siempre que en relación con lo que antecede el ejercicio de semejante autoridad no sea de naturaleza puramente rutinaria u oficinesca, sino que exija el uso de criterio independiente." 29 U.S.C.A. sec. 152.

([4]) La referida Ley fué enmendada por la Ley de Relaciones Obrero Patronales de 1947. Ley núm. 101 del 23 de junio de 1947, Congreso 80mo., primera sesión, 61 U. S. Stat. at Large, pág. 136.

Dicha disposición ha sido interpretada por las cortes en el sentido de que no se requiere que el empleado tenga todas las facultades allí enumeradas para que se le considere como un empleado de supervisión. Sólo es menester que tenga una de ellas. *N.L.R.B.* v. *Budd Mfg. Co.*, 169 F.2d 571, certiorari denegado en 335 U. S. 908; *Ohio Power Co.* v. *N.L.R.B.*, 176 F.2d 385; *N.L.R.B.* v. *Beaver Meadow Creamery*, 215 F.2d 247, 251. La Junta Nacional, sin embargo, ha reconocido que el conceder poderes de supervisión a un empleado ordinario, para ser ejercido sólo ocasionalmente, no convierte a éste en un empleado de supervisión. *N.L.R.B.* v. *Leland-Gifford Co.*, 200 F.2d 620, 625; *N.L.R.B.* v. *Quincy Steel Cast. Co.*, 200 F.2d 293, 296. En vista de ello, y de que las facultades enumeradas en la definición antes citada son de tal naturaleza que identifican al empleado que las posee con la gerencia y no con los empleados ordinarios, podemos concluir que la enmienda de referencia no alteró grandemente la situación.

En el caso de autos hay evidencia de que Juan Ramos García seleccionaba el personal en la finca del demandado, les asignaba el trabajo que debían realizar, dirigía éste y en general realizaba las labores correspondientes a un capataz. No hay duda alguna de que su trabajo lo identificaba con los intereses del patrono y no con los de los empleados ordinarios. Por esa razón debe considerársele como empleado de supervisión. Debemos, por tanto, concluir que la Junta no cometió error al imputarle responsabilidad al querellado por los actos de Ramos García.

Por disposición expresa de ley las conclusiones de hechos de la Junta son finales y definitivas siempre que, como sucede en este caso, estén respaldadas por evidencia. En tales circunstancias este Tribunal no tiene autoridad para cuestionarlas. Art. 9(2) (*a*) y (*b*), de la Ley de Relaciones del Trabajo de Puerto Rico; *Junta Rel. del Trabajo* v. *Simmons Int. Ltd.*, decisión *per curiam* del 7 de junio de 1955, ante pág. 375; *Rivera* v. *Junta Rel. del Trabajo*, 70 D.P.R. 5, 8; *Rivera* v. *Junta Rel. del Trabajo*, 70 D.P.R. 342, 350.

## II

"La prueba de la Junta no demuestra que haya existido una violación de la sec. 8(1) (*c*) de la Ley."

■■ El querellado aduce tres fundamentos para sostener su contención. Los discutiremos separadamente al igual que lo hicieron las partes en sus alegatos, pero alterando el orden para discutir en última instancia el primero de ellos, que se refiere a los obreros Blas González y Alfonso de León, a saber:

"2. La Junta no probó que los querellantes hubiesen como cuestión de hecho solicitado trabajo al demandado."

A nuestro juicio no tiene razón el demandado. La prueba creída por la Junta, y sostenida por la evidencia, revela que los obreros contra los cuales discriminó el querellado, trabajaron para éste hasta el mes de noviembre del año 1950, cuando fueron suspendidos de su empleo por no haber trabajo disponible. Al tiempo de ser suspendidos se les informó que regresaran en el mes de enero de 1951, cuando se reanudarían los trabajos en la finca. Más tarde fueron informados que los trabajos se reanudarían el día 8 de enero de 1951. Ese día se personaron en unión de otros trabajadores a la finca del querellado para solicitar empleo. Estando ellos congregados ante el capataz del querellado, Juan Ramos García, esperando ser seleccionados para trabajar, éste les manifestó que sólo había trabajo para aquellos que firmaran cierto documento repudiando la unión. Ante esa alternativa algunos de los obreros firmaron el documento en cuestión y fueron empleados. Los aquí concernidos, que no estaban de acuerdo con la condición dispuesta por Ramos García, no la aceptaron y se retiraron del sitio de los hechos.(5) A nuestro juicio en tales circunstancias podemos concluir que los obreros, al personarse ante el capataz Juan Ramos García y congregarse en espera de ser seleccionados para trabajar, estaban en efecto

---

(5) El día 15 de enero de 1951 dichos obreros volvieron a personarse a la finca del querellado a solicitar trabajo y se repitió el incidente relatado anteriormente.

solicitando empleo. *Olin Industries* v. *N.L.R.B.*, 191 F.2d 613, 617; 192 F.2d 799. Obviamente así lo entendió el propio Juan Ramos García y por ello les manifestó que no habría trabajo para aquéllos que no firmaran el documento de referencia. En verdad, no era necesario que los obreros solicitaran empleo individualmente. Una solicitud colectiva era suficiente. *Olin Industries* v. *N.L.R.B.*, supra; 2 Labor Law Reporter, sec. 4035.44, pág. 4328.

En vista de lo anterior, es innecesario considerar la contención de la Junta de que, atendidas las circunstancias de este caso, no era menester que los obreros solicitaran empleo por razón de que dicha solicitud hubiese sido inútil en vista de las manifestaciones del capataz al efecto de que sólo se le daría trabajo a aquéllos que firmaran el documento repudiando la unión. *Cf. Bennett-Hubbard Candy Co.*, 11 N.L.R.B. 1090, 1099; *Register Publishing Co., Ltd.*, 44 N.L.R.B. 834, 848; *Eagle-Picher Mining & Smelting Co.*, v. *N.L.R.B.*, 119 F.2d 903, 914.

"3. La Junta no probó que hubiese trabajo disponible para los querellantes."

 El querellado basa su contención en que para la fecha en que ocurrieron los actos incriminatorios sólo había trabajo en las fincas del demandado para "6 ó 10" obreros, por lo cual concluye que no había empleo disponible para los 18 obreros contra los cuales alegadamente discriminó. Como veremos, ello no constituye una defensa válida para el demandado. El caso de *Akin Products Co.*, 99 N.L.R.B. 1270, se expresa como sigue a la pág. 1275:

"Cuando, como aquí sucede, aparece de manera afirmativa que ciertas empleadas fueron rechazadas por razón de sus actividades en la unión, no puede constituir defensa alguna a la querella la alegación de que el patrono no podía emplear tanto a las mujeres que empleó como a las que rechazó. Conforme la Junta ha resuelto reiteradamente, un patrono no puede valerse de una rebaja económica en el número total de obreros que em-

plea como medio para discriminar contra aquéllos que eran miembros de la unión o que participaban activamente en pro de ésta."

El caso de *Swinerton & Walberg Co.*, 94 N.L.R.B. 1079 (⁶) va aún más lejos y se expresa como sigue a la pág. 1080:

"Sin embargo, según la Junta ha decidido recientemente en situación similar, la ley fué violada primeramente por los querellados cuando los querellantes inicialmente solicitaron empleo y se les informó que el pertenecer a la unión Millwrights constituía una condición de empleo, a pesar de que no hubieran entonces empleos disponibles. Al imponer tal condición ilegal, a los querellantes se les negó discriminatoriamente la oportunidad de ser considerados para ser empleados por los querellados. . . . Empero, en armonía con nuestra orden concediendo paga retroactiva a esos querellantes, no surgiría el derecho a tal paga retroactiva hasta que hubiera trabajo disponible y, conforme indicó el oficial examinador, ningún querellante que no estaba en condiciones de o que no estaba dispuesto a aceptar empleo en tal momento tendría derecho a paga retroactiva."

Véase también *Arthur G. McKee & Co.*, 94 N.L.R.B. 399.

Por otra parte, el Tribunal de Apelaciones de los Estados Unidos para el Tercer Circuito en el caso de *N.L.R.B.* v. *Textile Machine Works, Inc.*, 214 F.2d 929 a la pág. 932 se expresa en el sentido de .que ocurre una práctica ilícita por discriminación cuando otra persona es empleada en lugar del solicitante que fué objeto de la discriminación. También se expresa así a la pág. 934: "Toda vez que la práctica ilícita imputada la constituía la negativa discriminatoria a emplear, el abogado de la Junta tenía además que demostrar que la Textile empleó a otros para cubrir puestos vacantes que los empleados antiguos habían solicitado y para los cuales estaban capacitados."

Obviamente este último caso sienta una doctrina más limitada que los de *Swinerton* y *McKee* antes citados. No obstante, aún bajo la teoría en él expuesta creemos que la

---

(⁶) Véase: *N.L.R.B.* v. *Swinerton*, 202 F.2d 511 en que se puso en vigor la orden de la Junta en el caso anteriormente citado.

determinación de la Junta de que el querellado cometió el día 8 de enero de 1951 la práctica ilícita imputádale está debidamente respaldada por la prueba. Ésta demuestra que en dicho día había trabajo disponible en las fincas del querellado y que en efecto se le dió empleo a varios solicitantes, los cuales empezaron a trabajar. También demuestra que los obreros contra los cuales alegadamente se discriminó estaban capacitados para realizar el trabajo para el cual fueron empleados los otros obreros el día de los hechos. No encontramos nada en dicho caso que sea contrario al caso de *Akin* antes citado y que requiera la existencia de suficientes vacantes para emplear a todos los solicitantes como condición indispensable para que haya una negativa discriminatoria de empleo. En vista de ello, concluímos que el hecho de que sólo hubiera vacantes para emplear a algunos de ellos no exime de responsabilidad al demandado.

"1. La Junta no probó en forma alguna que los querellantes Blas González y Alfonso de León fuesen obreros del demandado."

Arguye el querellado que, no existiendo prueba de que Blas González y Alfonso de León hubiesen trabajado anteriormente o tenido alguna relación con él, la Junta cometió error al determinar, a base de que éstos se encontraban presentes entre los obreros solicitantes y de que no trabajaron en sus fincas en el año 1951, que hubo negativa discriminatoria de empleo en cuanto a ellos. También alega el querellado que no surge de los autos prueba alguna que establezca que dichos obreros estuviesen presentes en el sitio de los hechos con el propósito de solicitar empleo. Su argumento parte de una premisa falsa. La transcripción de la evidencia presentada ante el oficial examinador demuestra que la Junta tuvo ante sí prueba de que los obreros en cuestión, al igual que los otros contra los cuales se discriminó, habían sido empleados del querellado hasta el mes de noviembre de 1950, cuando fueron suspendidos de sus trabajos. Ello aparece de

la propia declaración del querellado. (⁷) Indudablemente, en tales circunstancias la Junta podía inferir de la presencia de dichos obreros—entre los que fueron a solicitar trabajo—que éstos en efecto fueron allí con el mismo propósito que sus compañeros. No era imprescindible la declaración de ellos para establecer este hecho. Además se infiere claramente de la declaración de los otros obreros discriminados que todos los obreros relacionados en la querella estaban en el sitio de los hechos con el propósito de lograr empleo en las fincas del demandado. Véase *Olin Industries* v. *N.L.R.B.*, supra. En vista de lo dicho anteriormente y de que el propio querellado admitió no haber empleado a dichos obreros durante el año 1951, debemos concluir que la Junta no cometió error alguno al determinar que se había discriminado contra ellos.

■ Conviene indicar que estamos de acuerdo con el abogado de la Junta en su contención de que para establecer un caso de violación al art. 8 (1) (*c*) por negativa discriminatoria a emplear, no es necesario probar que el obrero supuestamente discriminado había sido anteriormente empleado del patrono. Véanse *National Labor Rel. Bd.* v. *Waumbec Mills Inc.*, 114 F.2d 226; *Phelps Dodge Corp.* v. *N.L.R.B.*, 313 U. S. 177; *N.L.R.B.* v. *Textile Machine Works, Inc.*, 214 F.2d 929; 2 Labor Law Reporter, sec. 4020, pág. 4315. Sin embargo, en este caso dicha prueba era de importancia, como vimos anteriormente, para establecer el propósito de los referidos obreros al personarse el día de los hechos en la finca del demandado.

### III

"La Junta actuó con parcialidad al aplicar diferentes normas de credibilidad a sus testigos y a los testigos del demandado."

■ La cuestión suscitada por el querellado en este señalamiento es claramente frívola y no merece gran discusión.

---

(⁷) La Junta al adoptar expresamente las conclusiones de hechos del oficial examinador adoptó e hizo suya la conclusión de éste al efecto de que los obreros relacionados con la querella eran todos trabajadores regulares de la finca del querellado.

Basta decir que la apreciación de la prueba es función exclusiva de la Junta y que, conforme antes se ha dicho, este Tribunal no tiene poder para intervenir con las determinaciones de ésta en el ejercicio de dicha función. Véanse art. 9 (2) (*a*) y (*b*) de nuestra Ley; *Junta Rel. del Trabajo* v. *Simmons Int., Ltd.,* supra; y *Labor Board* v. *Waterman S. S. Co.,* 309 U. S. 206.

*Se dictará sentencia poniendo en vigor la orden de la Junta.*