JUNTA DE RELACIONES DEL TRABAJO DE PUERTO RICO, peticionaria y recurrida, *v.* UNIÓN DE TRONQUISTAS DE P. R., LOCAL 901, demandada y recurrente.

*Números:* CE-85-454, CE-85-676 *Resueltos:* 13 de noviembre de 1986

*Juan Antonio Navarro,* abogado de la peticionaria; *Pedro J. Varela,* abogado de la recurrida.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

En 1978, Coca-Cola Bottling Company hizo ciertas reducciones en su personal por razones económicas. El convenio colectivo entonces vigente disponía que en estas situaciones regiría el criterio de antigüedad en la *clasificación.* Sin em-

bargo, Coca-Cola utilizó el criterio de antigüedad en la *compañía*. Surgió entonces un conflicto entre la Unión y el patrono. Aquélla sostenía que la remoción de empleados debía regirse por el convenio y éste por el Art. 3 de la Ley Núm. 80 de 30 de mayo de 1976 (29 L.P.R.A. sec. 185c). Las partes recurrieron a arbitraje con la siguiente sumisión:

> Determinar cuál prevalece en caso de conflicto entre una cláusula de antigüedad negociada en un convenio colectivo y la Ley 80 de 30 de mayo de 1976.

El 31 de octubre de 1978, el árbitro del Negociado de Conciliación y Arbitraje, Lic. José M. Davis, emitió un laudo que determinaba la supremacía del convenio. La Unión pidió por escrito el 29 de noviembre su cumplimiento. Inconforme, Coca-Cola recurrió al Tribunal Superior, Sala de San Juan, para impugnar su validez (Civil Núm. 78-7769). La Unión se opuso y además formuló una reconvención en la que solicitaba que el laudo se cumpliera. El tribunal falló a favor de la Unión, declaró con lugar la reconvención y ordenó sin dilación su cumplimiento. En *Coca-Cola* v. *Unión de Tronquistas*, 109 D.P.R. 834 (1980) —11 de junio— confirmamos dicho dictamen.

La Unión gestionó verbalmente en cuatro (4) ocasiones con el patrono, sin éxito, que acatara el laudo. En agosto de 1980, solicitó de la Junta de Relaciones del Trabajo que lo pusiera en vigor. El 29 de diciembre de 1980, la Junta emitió una resolución que negaba la solicitud de la Unión "por cuanto ya dicho Tribunal Supremo pasó juicio sobre el [laudo] y emitió una opinión y la correspondiente sentencia el 11 de junio de 1980". Una moción de reconsideración de la Unión fue declarada sin lugar.

Durante los tres meses siguientes, la Unión no realizó ninguna gestión adicional. Por tal razón, los empleados afectados presentaron una querella, por representación inadecuada, contra la Unión y un cargo por incumplimiento del convenio colectivo contra el patrono. La Junta emitió querellas de con-

formidad. La Coca-Cola trasladó su caso a la Corte de Distrito federal para el Distrito de Puerto Rico, de acuerdo a la doctrina sentada en *Volkswagen de Puerto Rico, Inc.* v. *Puerto Rico Lab. Rel. Bd.*, 454 F.2d 38 (1er Cir. 1972). El 16 de octubre de 1981, la Junta ordenó el cierre del caso contra Coca-Cola. El litigio está pendiente ante dicha corte.

El 25 de junio de 1985, la Junta emitió su decisión, la cual fue modificada el 17 de septiembre del mismo año. Determinó inicialmente que la Unión de Tronquistas había faltado a su deber de justa representación y que era razonable imponerle la obligación de satisfacer el cincuenta (50%) por ciento de las pérdidas sufridas en los ingresos de los unionados afectados. Después la aumentó al cien (100%) por ciento. A tono con ese decreto, compareció ante nos en solicitud de que lo pongamos en vigor. Por su parte, la Unión nos pide que revisemos dicha decisión y orden. Consolidamos ambos recursos y resolvemos.

## I

■ En síntesis, la Unión de Tronquistas señala que la Junta debió abstenerse de formular una determinación final en este caso. Acepta que existe jurisdicción *concurrente* entre el foro federal y el estatal en materia de violaciones al convenio colectivo y el deber de representación adecuada. *Vaca* v. *Sipes*, 386 U.S. 171 (1967).[1] No obstante arguyen —debido a que el caso se fraccionó y la acción contra el patrono está pendiente en el foro federal— que existe el peligro potencial de decisiones contradictorias y ello precluye que la Junta ejerza jurisdicción. No le asiste la razón.

---

[1] No hay controversia sobre que la Coca-Cola está en el comercio interestatal. El derecho federal rige. *Vaca* v. *Sipes*, 386 U.S. 171 (1967). Por otro lado, en *J.R.T.* v. *U.T.I.G.*, 110 D.P.R. 237 (1980), reconocimos el deber de justa representación de la Unión bajo la ley local.

■ *Vaca* v. *Sipes*, supra, reconoció que la jurisdicción para entender en situaciones como la que nos ocupa es concurrente entre el foro federal y el estatal. En estos casos, el derecho federal es el aplicable, incluso en materia de prescripción. *DelCostello* v. *Teamsters*, 462 U.S. 151 (1983). Como es sabido, la jurisdicción concurrente entre ambos foros en el área laboral prevalece cuando "no está excluida de forma expresa o por la incompatibilidad nacida de la naturaleza peculiar del caso". (Traducción nuestra.) (²) *Dowd Box Co.* v. *Courtney*, 368 U.S. 504, 508 (1962).

■ En reclamos de representación inadecuada como el presente —en que se alega que el patrono violó el convenio— para que prospere la acción contra la Unión es preciso demostrar previamente que el patrono lo infringió. *DelCostello* v. *Teamsters*, supra, y *Vaca* v. *Sipes*, supra. En *DelCostello* v. *Teamsters*, supra, págs. 164–165, el Tribunal Supremo federal hizo los siguientes importantes pronunciamientos en torno a este tipo de acción:

> Una demanda así, como cuestión formal, comprende dos causas de acción. La demanda contra el patrono se basa en la Sección 301, ya que el empleado está alegando un incumplimiento del convenio colectivo. La demanda contra la unión es por el incumplimiento del deber de ésta en ofrecer una representación justa, que está implícito tras el esquema de la Ley Nacional de Relaciones del Trabajo. "No obstante, las dos reclamaciones son inextricablemente interdependientes. 'Para prevalecer ya sea contra la compañía o contra la unión . . . [los empleados-demandantes] no sólo deben demostrar que su despido fue contrario al contrato, sino que también cargan con el peso de demostrar que la unión incumplió su deber.' " *El empleado puede elegir demandar a uno de los demandados y no al otro,* pero el caso que tiene que probar es el mismo ora demande a uno, al otro o a ambos. (Traducción nuestra y citas omitidas.)

_____

(²) Compárese con nuestros pronunciamientos en *Acevedo* v. *Srio. Servicios Sociales,* 112 D.P.R. 256 (1982).

Es evidente pues, que *DelCostello* v. *Teamsters*, supra, establece que en una acción contra la unión no es necesario incluir como parte al patrono. *Cf.* C. Morris, *The Developing Labor Law*, 2da ed., Washington, D.C., Bureau of Nat. Affairs, 1983, Vol. II, págs. 1305–1306 n. 95.

La separación de acciones en el caso de autos plantea una situación similar. Se impone igual solución. La Junta actuó correctamente. No era menester la presencia continua y comparecencia del patrono.

Por otro lado, a la luz de los criterios de *Dowd Box Co.* v. *Courtney*, supra, tampoco procede que nos abstengamos de intervenir. Aparte del largo tiempo transcurrido desde que Coca-Cola trasladó el caso a la Corte de Distrito federal, es muy remota la posibilidad de que ambos foros lleguemos a decisiones incompatibles, de forma tal que se derrote la política pública laboral de uniformidad. Debemos recordar que no hay controversia alguna sobre la conducta patronal hasta nuestra decisión en *Coca-Cola* v. *Unión de Tronquistas*, supra. Además, es incuestionable que los empleados no han recibido los beneficios derivados de nuestro mandato. Ante estos hechos indisputables, no cabe imaginar conflicto probable entre ambos foros. Sobre todo, la cuestión primordial en el caso ante nos —si la Unión no representó adecuadamente a los empleados— depende de los remedios que tenía a su disposición la Unión *bajo el derecho local* para dar valor práctico a nuestra decisión de 11 de junio de 1980.

II

Superada la cuestión jurisdiccional, analicemos la validez del dictamen de la Junta. Ésta encontró probado que la Unión de Tronquistas no representó adecuadamente a los empleados querellantes. El deber de justa representación no exige que una unión procese toda queja de los empleados. Pero requiere, una vez puesto en funcionamiento el mecanismo de quejas y agravios, que la unión la tramite en una

forma que no sea perfunctoria, hostil o arbitraria. *Vaca* v. *Sipes*, supra, pág. 177; *J.R.T.* v. *U.T.I.G.*, 110 D.P.R. 237 (1980). En síntesis, el deber de la Unión se proyecta en una representación razonable, diligente y responsable.

Bajo este enfoque notamos que con posterioridad a nuestra decisión en 1980, la Unión sólo hizo dos gestiones, a saber: 1) realizó algunas conversaciones con el patrono para ver si acataría el laudo, y 2) al hacer éste caso omiso, recurrió a la Junta para que compareciese ante nos a poner en vigor el laudo. (3) Esta última diligencia no prosperó. Ante esa situación, como remedio, la Unión pudo y debió acudir directamente al Tribunal Superior, Sala de San Juan, para que éste, conforme su orden de que el laudo era válido y debería ser cumplido inmediatamente por el patrono, declarara incursa en desacato a Coca-Cola. (4) En esas circunstancias particulares, el requerir que la Junta nos solicitara el remedio que ya un tribunal de instancia había ordenado, hubiese sido un trámite repetitivo e injustificado.

 Concluimos que la falta de representación adecuada consistió en que la Unión no estudió y utilizó satisfactoria-

---

(3) Conforme lo dispuesto en el Art. 9(2)(c) de la Ley Núm. 130 de 8 de mayo de 1945, según enmendada. En lo pertinente, reza:

"A los fines de promover la negociación colectiva, la Junta podrá, en el ejercicio de su discreción, ayudar a poner en vigor laudos de arbitraje emitidos por organismos competentes de arbitraje, bien designados de acuerdo con cualquier convenio colectivo firmado por un patrono y una organización obrera, o en virtud de cualquier acuerdo firmado por una organización obrera y un patrono. Después de emitido un laudo de arbitraje, la Junta, a solicitud de cualquiera de las partes en el procedimiento de arbitraje, podrá dar su consejo o podrá, si fuere requerida para ello, a nombre de la parte que lo solicite, entablar acción legal adecuada ante el Tribunal Supremo de Puerto Rico para que se ponga en vigor el laudo de arbitraje." 29 L.P.R.A. sec. 70(2)(c).

(4) La sumisión consistió en determinar si prevalecía el convenio o la Ley Núm. 80. Hasta ese momento la práctica de Coca-Cola era no observar el convenio. El laudo tuvo el efecto de desautorizar esa conducta. Las decisiones judiciales refrendaron la aplicabilidad del convenio y decretaron su fiel cumplimiento.

mente los diversos remedios que tenía a su alcance. Por ello no estuvo presta a seguirlos. Durante los dos meses siguientes a la confirmación del laudo por este Tribunal, la Unión se dedicó a dialogar con el patrono, aun cuando ya era claro que éste no acataría el laudo. Luego de la decisión de la Junta en la que se negaba a ponerlo en vigor, la Unión pidió reconsideración. Tres meses después de denegada de plano esta última petición, nada hizo en favor de los empleados. El deber de la Unión no era sólo lograr un fallo favorable para sus representados, sino también, diligente y vigorosamente, convertirlo en realidad. El récord sostiene cabalmente la decisión de la Junta que impone responsabilidad a la Unión hasta un cincuenta (50%) por ciento. [5]

*Se dictará sentencia que confirme la decisión y dictamen de la Junta y ordene que el laudo se ponga en vigor.* [6]

El Juez Asociado Señor Rebollo López no intervino.

---

[5] La Unión cuestiona la cuantía de responsabilidad que le impuso la Junta. A la luz de *Bowen* v. *United States Postal Service,* 459 U.S. 212 (1983), nos parece inmeritorio su planteamiento.

[6] Conforme la práctica establecida, los incidentes de desacatos por incumplimientos en este tipo de decretos judiciales son posteriormente remitidos y atendidos ante el Tribunal Superior.