TOMÁS INOCENCIO MORALES TORRES, demandante y recurrente, *v.* JUNTA DE RELACIONES DEL TRABAJO DE PUERTO RICO, demandada y recurrida.

*Número:* CE-85-593 *Resuelto:* 30 de junio de 1987

*Carlos F. López López,* abogado del recurrente; *Luis B. Osorio Díaz,* abogado de la recurrida.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

I

El 7 de octubre de 1981, Tomás I. Morales Torres, Técnico de Análisis y Programación IV de la Autoridad de Acueductos y Alcantarillados (en adelante, la Autoridad), renunció efectivo el 14 de ese mes. El 9 de octubre acudió ante el Ing. Orlando Olivera Rivera, Presidente de la *Unión Hermandad Independiente de Empleados Profesionales de la Autoridad de Acueductos y Alcantarillados* (en adelante, la Unión), para informarle que la Autoridad se negaba a pagarle el bono de Navidad, según el convenio colectivo. El ingeniero Olivera Rivera se comunicó con Oscar J. Negrón Vázquez, Jefe de Personal de la Autoridad, para exponerle la posición de la Unión. Al cesar sus labores la Autoridad le satisfizo $15,723.70 como "pago global" en concepto del sueldo devengado y las licencias regular y de enfermedad acumuladas. Excluyó el bono.

El convenio —vigente desde el 29 de junio de 1978 al 30 de junio de 1982— en síntesis, en su Art. XIX, estipulaba que todo empleado cubierto, que reuniera los requisitos de la Ley Núm. 34 de 12 de junio de 1969 (3 L.P.R.A. sec. 757), era acreedor a dicho bono. La Autoridad debía pagarlo, salvo razón de fuerza mayor, *en o antes del 15 de diciembre.* Para propósitos de su cómputo, la base sería el siete y medio (7.5%) por ciento del sueldo devengado desde el 1ro de diciembre del año anterior al 30 de noviembre.

El 16 de octubre, el ingeniero Olivera Rivera reiteró por escrito y solicitó de Negrón Vázquez el ejercicio de sus

buenos oficios acerca de la liquidación del aludido bono. El 1 de diciembre Negrón Vázquez notificó que el pago era responsabilidad de la Autoridad de Comunicaciones, nuevo patrono de Morales Torres. El 2 de diciembre, la Unión y la Autoridad estipularon por escrito: (1) continuar el diálogo administrativamente para solucionar varias querellas, entre las cuales figuraba la "C.Q. 85-5 H Negativa a Pagar el bono navideño, Art. XIX", correspondiente a Morales Torres; (2) de tener que posteriormente recurrir ante un árbitro, no levantar los términos prescriptivos del Art. VI del convenio, y (3) que las reglas del Comité de Querellas las determinaría el árbitro asignado por el Secretario del Trabajo y Recursos Humanos.

El 7 de diciembre, el ingeniero Olivera Rivera planteó nuevamente ante Negrón Vázquez la cuestión. El *9 de diciembre*, Morales Torres, mediante documento denominado memorando legal suscrito por el abogado José Juan Santiago, pidió el pago inmediato del bono, intereses desde la fecha de su renuncia, $4,500 en daños y perjuicios, más *$500* en honorarios de abogado. Negrón Vázquez se negó a recibirlo. Lo consideró como una querella que debía presentarse ante el foro establecido en el convenio colectivo. El 11 de diciembre, el licenciado Santiago la sometió al Comité de Querellas. Así acogida, la querella fue identificada como C.Q. 85-5 H, numeración que coincide con uno de los asuntos objeto de la estipulación acordada previamente el 2 de diciembre. El 4 de enero de 1982 la Autoridad la contestó. Pidió su desestimación sumaria porque aduce que el Comité carecía de jurisdicción, pues Morales Torres ya no era su empleado. Aunque reconoció que era acreedor al bono, expuso que la controversia real era quién debería pagarlo, si ella o el nuevo patrono, la Autoridad de Comunicaciones. Hasta esta etapa la participación del licenciado Santiago no fue objetada por la Autoridad ni la Unión.

Posteriormente, el 8 de enero, el Director del Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos —después de acceder a una moción del licenciado Santiago, fechada 29 de diciembre— le notificó una lista de los árbitros disponibles para presidir la vista. Mientras tanto, con fecha de 12 de enero, el licenciado Santiago se opuso a la desestimación de la Autoridad. Sostuvo que el Comité de Querellas tenía jurisdicción. Reiteró el pago del bono, intereses, daños y honorarios de abogado, ascendentes *ahora,* a *$1,500.*

Así las cosas, la Autoridad y la Unión seleccionaron como árbitro a Pedro Santos, quien como quinto miembro presidiría el Comité de Querellas. El 10 de febrero de 1982 éste notificó a la Autoridad, Unión y al licenciado Santiago el señalamiento de la vista para el caso A-1436 a celebrarse el 26 de mayo de 1982. Ésta no se efectuó, pues con anterioridad la Autoridad y la Unión informaron al árbitro que la querella —y cuatro (4) más— se discutían con miras a solucionarlas administrativamente. El licenciado Santiago no fue notificado de estas conversaciones; las mismas fueron infructuosas. El 9 de marzo, el ingeniero Oliveras notificó a Negrón Vázquez que procedía la designación de un árbitro. Aproximadamente dos (2) meses después, el 10 de mayo, reiteró por escrito el pedido al Director Ejecutivo de la Autoridad, Ing. Wilson M. Loubriel. El 14 de mayo éste le indicó que el asunto había sido referido a su ayudante especial a cargo de relaciones industriales, quien haría un estudio sobre las querellas pendientes. El 26 de mayo, el ingeniero Oliveras solicitó directamente del Secretario del Trabajo y Recursos Humanos la designación del árbitro. Se designó a Jaime A. Belgodere, quien señaló la vista para el 2 de agosto.

Insatisfecho, Morales Torres, por medio de su abogado, presentó el 1ro de junio en la Junta cargos contra la Autoridad y la Unión (CA-6745 y CA-6746). Morales Torres

imputó a la primera violación del convenio colectivo y a la segunda, igual cargo, más infringir el deber de justa e imparcial representación. El 31 de diciembre, la División Legal de la Junta emitió querellas y las consolidó. Entonces el licenciado Santiago solicitó el archivo del caso ante el árbitro Santos del Comité de Querellas para alegar falta de jurisdicción, toda vez que ya la Junta había intervenido y expedido las querellas. El 7 de febrero de 1983 se celebró la audiencia en los casos contra la Unión y la Autoridad. Allí las tres partes acordaron que continuaría el caso en el foro de arbitraje y solicitarían el archivo sin perjuicio de los casos ante la Junta. Oportunamente la Junta accedió.

Posteriormente, el licenciado Santiago pidió que lo relevaran de esa estipulación y que continuaran en la Junta los procedimientos debido a que la Unión y la Autoridad se oponían a su participación forense ante el foro de arbitraje. El 6 de septiembre el árbitro Belgodere declaró sin lugar esta solicitud. Dejó en vigor un señalamiento para el 12 de septiembre. El 9 de septiembre el licenciado Santiago solicitó que se dejara sin efecto la resolución de la Junta que remitía el caso a arbitraje. La Autoridad se opuso a la moción y a la participación del licenciado Santiago en los procedimientos. Compareció entonces la División Legal de la Junta. Como resultado, el 10 de octubre la Junta ordenó la reapertura. En su resolución expresó: "Al transarse el caso a los fines de trasladar la controversia a foro de arbitraje, tuvimos la impresión de que el [Lic.] Santiago continuaría representando al querellante en dicho foro, máxime tratándose de que se había imputado indebida representación a la unión." Ap. 15, pág. 104.

Finalmente, el 26 de enero de 1984 se continuó y dilucidaron los casos contra la Unión y la Autoridad, los cuales quedaron sometidos como prueba documental.

Oportunamente la Junta concluyó que la Autoridad violó el Art. XIX del convenio al no pagarle a Morales Torres

el bono de Navidad e incurrió en práctica ilícita en violación al Art. 8, Sec. 1, inciso (f) de la Ley Núm. 130 de 8 de mayo de 1945 (29 L.P.R.A. sec. 69(1)(f)). Igualmente determinó que la Unión "violó el Art. VI del convenio colectivo al negarse, en forma arbitraria, a tramitar adecuadamente la querella del señor Morales y al tratar con la misma en forma perfunctoria en un procedimiento informal". Ap. 1, pág. 38. Además la halló incursa en práctica ilícita del trabajo, en violación al Art. 8, Sec. 2, inciso (a) de la ley, *supra*, 29 L.P.R.A. sec. 69(2)(a). Ordenó —en proporción de setenta por ciento (70%) a la Autoridad y treinta por ciento (30%) a la Unión— el pago del bono de Navidad correspondiente al 1981, una cantidad igual en concepto de la compensación adicional dispuesta en la Ley Núm. 96 de 26 de junio de 1956 (29 L.P.R.A. sec. 246b(a)), más intereses legales a partir de la notificación de la decisión y orden de 31 de enero de 1985. Además, condenó a la Unión y a la Autoridad a satisfacer $500 de honorarios por las gestiones forenses desplegadas por el licenciado Santiago fuera de la Junta. Finalmente, ordenó que la Autoridad y la Unión fijaran un aviso de esa decisión por 30 días consecutivos.

Ésta, en lo pertinente, se fundamenta en el siguiente análisis:

La relación de hechos revela que el querellante, señor Tomás Morales, fue diligente en los trámites que realizó para agotar los remedios del convenio a los fines de que se ventilara su querella en el foro de arbitraje. Consideramos que la negligencia, y sobre todo, la arbitrariedad de la Unión en el trámite de la querella del señor Morales fue notoria. La Unión, después de haber actuado en concierto con el abogado particular del querellante, llegó a un acuerdo con un representante de la Autoridad a los fines de, supuestamente, ventilar administrativamente una serie de querellas entre las cuales se encontraba la del querellante Morales. Sin embargo, en ningún momento notificó al querellante de ese acuerdo ni tampoco el que se hubiera radicado una querella en relación

a su caso. *Ciertamente, la conducta de la unión y del patrono convirtieron en inoperante el proceso de quejas y agravios que existía en el convenio colectivo.*

. . . . . . . .

En síntesis, un patrono y una unión no pueden sacar de los canales establecidos por el convenio colectivo una querella para tratarla bajo un supuesto acuerdo informal en *forma negligente, descuidada y haciendo caso omiso del tiempo produciendo el anquilosamiento del foro de quejas y agravios.* La negativa de la unión en que se viera la querella del señor Morales cuando ya había sido inclusive, asignado al árbitro Pedro Santos para presidir la vista de la misma, constituye una conducta permeada de arbitrariedad. En adición, incurrieron en negligencia crasa y en un trato perfunctorio en lo relativo al trámite de la querella del señor Morales, ya que ni siquiera hicieron esfuerzos dentro de un período de tiempo razonable para reunirse con los representantes de la Autoridad a los fines de dilucidar en el contexto administrativo las mismas, y no es hasta transcurridos varios meses que el Ing. Olivera se reúne con el señor Negrón, quien según el Director Ejecutivo de la Autoridad, no tenía las facultades para bregar con asuntos relativos a problemas laborales. (Énfasis suplido.) Ap. 1, págs. 22–23, 26.

Subsiguientemente, previo examen de las excepciones presentadas por la Autoridad y la Unión, el 31 de enero de 1985, la Junta confirmó el proyecto de decisión y orden.

La Autoridad consignó las sumas requeridas en la Junta. Morales Torres no las aceptó. Argumentó la existencia de una deficiencia resultante de un cómputo incorrecto del bono de Navidad. El 14 de agosto la Junta declaró sin lugar el planteamiento, ordenó la separación de los casos para así proceder contra la Unión, quien no había cumplido su decisión y orden. Inconforme, Morales Torres acudió ante nos, para señalar que la Junta incurrió en varios errores.

En su oposición, la Junta nos pide que la confirmemos y pongamos en vigor.(¹)

## II

En sus dos primeros señalamientos, Morales Torres se queja de que la Junta no permitió a su abogado privado inspeccionar el expediente, la transcripción de la vista, y así poder presentar excepciones al proyecto de decisión y orden. Argumenta que la Junta infringió los Arts. 9(2)(b) y 12 de su estatuto orgánico, 29 L.P.R.A. secs. 70(2)(b) y 73, y la Sec. 10 del Art. II de su propio reglamento y, por ende, el debido proceso de ley, la igual protección de las leyes y el derecho a asistencia de abogado. No tiene razón.

El Art. 9(2)(b), *supra*, en lo pertinente, dispone que la Junta, para fines de una revisión ante este foro, expedirá una transcripción certificada. Por otro lado, el Art. 12 invocado dispone:

> *Sujeto a la razonable reglamentación* que establecerá la Junta, los cargos, peticiones, querellas, transcripciones de evidencia, decisiones y órdenes relativas a procedimientos instituidos por la Junta o ante ella, *deberán ser documentos públicos a la disposición de los que interesen consultarlos o copiarlos.* (Énfasis suplido.) 29 L.P.R.A. sec. 73.

El lenguaje de ambas disposiciones, por delegación legislativa, confiere a la Junta poder para reglamentar razonablemente el acceso a los documentos y la expedición de transcripciones debidamente certificadas.

Contrario a lo que parece argumentar Morales Torres, la caracterización de documentos públicos no conflige con los principios generales esbozados en *Soto* v. *Srio. de Justicia*, 112 D.P.R. 477 (1982).

---

(¹) El 25 de febrero de 1986, la Junta optó por modificar su resolución de 11 de febrero y posponer la acción contra la Unión.

Así aclarado, la cuestión se reduce a determinar si son razonables las normas de la Junta. En esta tarea, debemos bosquejar a grandes rasgos ciertas características en que se afianzan las encomiendas de dicho organismo. Por mandato de ley, la Junta desempeña un deber tutelar fundamental en las relaciones obrero-patronales con miras a implantar la política oficial, prevenir prácticas ilícitas y diseñar remedios apropiados. En la consecución de estos fines, investiga y, previa presentación de cargos, ventila y finalmente, como foro cuasi adjudicativo, resuelve querellas. En esa función de dirimir querellas, el "peso de la prueba recae sobre los abogados de la Junta". *J.R.T.* v. *Bankers Club of P.R., Inc.*, 94 D.P.R. 600, 604 (1967). El esquema sigue básicamente el modelo federal. 29 U.S.C. sec. 151 *et seq.*

La Sec. 6, Art. II del Reglamento Núm. 2 de la Junta, válidamente dispone —con sujeción al ejercicio *discrecional* del Oficial Examinador— admitir la presencia y participación limitada de un abogado de un patrono, unión u obrero en particular. Ello no significa que el abogado de la División Legal de la Junta queda desplazado. Sobre éste continúa recayendo el deber primordial de ejercer las funciones básicas tales como citar testigos, interrogar y contrainterrogarlos, y presentar la prueba documental. Por ende, la intervención en este proceso de un abogado privado está circunscrita a cubrir extremos pertinentes o suplir lagunas evidenciarias conforme lo autorice el Oficial Examinador.

En resumen, ni la ley ni el reglamento de la Junta reconocen un derecho absoluto e irrestricto a que un abogado privado intervenga y participe en los trámites y audiencias ante la Junta. El estatuto se apuntala en que el abogado de la Junta es quien representará los intereses de aquellos obreros querellantes afectados. La experiencia tiende a demostrar que este diseño, en la práctica, ha

funcionado satisfactoriamente. Igual ha sido en la jurisdicción federal. En ausencia de planteamiento válido constitucional o razones de peso, hemos de abstenernos de trastocarlo. Resolvemos que la intervención en el proceso de un abogado privado es limitada. En los abogados de la División Legal de la Junta descansa el ingrediente medular del interés público que la ley prevé.

■ Esclarecido este extremo, de los dictámenes de la Junta se desprende que éstos tenían como único fin indicarle al abogado de Morales Torres que canalizara su reclamo "a través de la División Legal de la Junta". Subsiguientemente se le aclaró que ese trámite no era óbice para que su representante privado examinara el expediente así como el récord taquigráfico en poder del Lic. Luis B. Osorio de la División Legal. En el expediente de la Junta no hay prueba indicativa de arbitrariedad de la Junta o que le haya negado acceso al expediente al abogado de Morales Torres. Si algo revela el expediente administrativo, es que hubo una efectiva participación del licenciado Santiago en todo momento, incluso en la audiencia ante el Oficial Examinador. El propio licenciado Santiago así lo admite al afirmar que su extenso memorando de derecho ante el Oficial Examinador fue considerado por la Junta. "La norma de 'debido proceso de ley' no tiene en el campo del derecho administrativo la rigidez que se le reconoce en la esfera penal." *A.D.C.V.P.* v. *Tribunal Superior*, 101 D.P.R. 875, 882 (1974).

■ Respecto a la presentación de excepciones al proyecto de decisión y orden por el abogado de Morales Torres, la Junta nuevamente aduce que ello corresponde al abogado de la División Legal, encargado de abogar y representar la vindicación de derechos públicos. Tiene razón. La cuestión es una eminentemente discrecional, que

a la luz de la experiencia pericial (*expertise*) del organismo habremos de respetar.

Notamos que la Junta satisfactoriamente ha reglamentado la ordenación de sus labores y procedimientos. Según autorizado en la ley, corresponde "al miembro de la Junta, agente o agencia que conduzca la audiencia ... permitir ... a *cualquier otra persona*, que intervenga y que presente prueba en dicho proceso". 29 L.P.R.A. sec. 70(1)(a) *in fine.* A tal efecto, como mecanismo diseñado para hacer viable la intervención y participación en cualquier procedimiento o audiencia de cualquier persona, empleados, patrono u organización obrera con demostrado interés, 29 R.&R.P.R. secs. 64-4 y 64-7 (b), el reglamento concede a *cualquier parte en el caso* o al abogado de la Junta, la potestad de presentar *excepciones* al informe del Oficial Examinador o a cualquier otra parte del expediente o procedimiento. 29 R.&R.P.R. sec. 64-11.

■ Finalmente, advertimos que los derechos de un obrero quedan protegidos, pues la propia Ley le reconoce capacidad legal para cuestionar ante este foro judicial toda orden final de la Junta, que conceda o niegue —en todo o en parte— el remedio que interesa. 29 L.P.R.A. sec. 70(2)(b). En resumen, no hay evidencia de que a Morales Torres se le haya privado o impedido de ejercitar sus derechos ante la Junta o que el procedimiento haya sido ineficaz. Sujeto a la reglamentación razonable antes aludida, tuvo plena participación.

### III

Morales Torres cuestiona además que la Junta no le haya: (1) concedido daños y perjuicios por la violación del convenio; (2) costas, gastos y honorarios de abogado; (3) fijado honorarios de abogado más altos por la gestión del abogado privado ante el foro de arbitraje; (4) ordenado el

pago de intereses desde la fecha en que se debió pagar el bono de Navidad; (5) computado las compensaciones por vacaciones acumuladas y licencia por enfermedad para propósitos del bono de Navidad; (6) imputado responsabilidad solamente al patrono, y (7) resuelto que las querelladas no violaron el Art. 5(1) de la ley y el Art. VI, Sec. 4(Q) del convenio colectivo, al no permitir al recurrente tramitar su querella. Evaluemos estos señalamientos.

### 1. *Daños y perjuicios*

En el pasado hemos reconocido la facultad discrecional de la Junta para conceder los remedios necesarios y apropiados conducentes a lograr los propósitos de la ley. *U.T.I.E.R.* v. *J.R.T.*, 99 D.P.R. 512, 533 (1970). En el contexto de los hechos del caso de autos, del análisis de la Junta se desprende que dicho foro consideró que la imposición de daños y perjuicios no era necesaria ni apropiada. Debemos respetar esa decisión. No hay motivos para sustituirla. Ciertamente el agravio sufrido por Morales Torres no era de tal intensidad que ameritara ese remedio. Simplemente no se le pagó un bono. La Junta al tomar su decisión concedió el remedio inserto en la Sec. 30 de la Ley Núm. 96 de 26 de junio de 1956, consistente en la imposición de una "compensación adicional, además de las costas, gastos, intereses y honorarios de abogado del procedimiento, estos últimos en suma razonable que nunca bajará de cincuenta (50) dólares". 29 L.P.R.A. sec. 246b(a). Además, en su decisión de 31 de enero de 1985, ordenó el pago de una "compensación igual adicional", Ap. 6, pág. 66, remedio que satisface plenamente los objetivos de la Ley de Relaciones del Trabajo. No se cometió el error señalado.

### 2. *Honorarios de abogado y costas ante la Junta*

Con relación a éstos la Junta expresó:

... reiteramos nuestro criterio en el sentido de que no impondremos honorarios a favor de un abogado privado de una parte querellante por servicios dados a tal "parte" en este foro, toda vez que la representación la ostenta la División Legal de la Junta, la cual a su vez representa el interés público. Esta posición no impide, sin embargo, que reconozcamos la procedencia de conceder honorarios por gestiones realizadas fuera de esta agencia, tales como en el foro de arbitraje, como efectivamente sucedió en este caso, en virtud de la citada ley y jurisprudencia aplicable. (Citas omitidas.) Ap. 1, págs. 35–36.

En virtud de este enfoque le concedió una partida de $500 en concepto de honorarios del abogado privado de Morales Torres por sus gestiones *fuera* de la Junta.

Ello está a tono con la doctrina expuesta en *Colón Molinary* v. *A.A.A.*, 103 D.P.R. 143, 159–160 (1974). Allí al equiparar un laudo arbitral a una adjudicación judicial, concluimos que, de ordinario, "procede la imposición de honorarios en casos en que el obrero tiene que acudir al foro sustitutivo del judicial a hacer valer sus derechos. ... Sin embargo, preciso es destacar que al igual que las acciones ventiladas en el escenario judicial, la cuantía de honorarios a ser impuesta dependerá de la naturaleza del asunto y demás factores y criterios desarrollados en nuestra jurisprudencia, y ello bajo un sano ejercicio discrecional del árbitro". Véase, también, *Beauchamp* v. *Dorado Beach Hotel,* 98 D.P.R. 633 (1969).

### 3. *Cuantía de honorarios*

La consideramos razonable. De hecho, la suma de $500 es igual a la originalmente estimada en su querella original, que ciertamente fue prematura, pues el bono sería pagadero "en o antes del 15 de diciembre".

Las determinaciones de hechos según la prueba son concluyentes, pues están respaldadas por la evidencia. Art.

9(2)(a) de la Ley de Relaciones del Trabajo de Puerto Rico, 29 L.P.R.A. sec. 70(2)(a); *J.R.T.* v. *Acevedo*, 78 D.P.R. 540, 545 (1955). No debemos alterarla. Igual conclusión se impone en cuanto a costas y gastos.

4. *Pago de intereses*

La norma establecida jurisprudencialmente es que la imposición de intereses legales se computa a partir de la fecha de la orden, laudo o decisión. *Municipio de Mayagüez* v. *Rivera*, 113 D.P.R. 467, 472 (1982); *Colón Molinary* v. *A.A.A.*, supra; *J.R.T.* v. *Caribbean Towers, Inc.*, 102 D.P.R. 774, 782–783 (1974); *J.R.T.* v. *Milares Realty, Inc.*, 90 D.P.R. 844, 860 (1964). La argumentación del recurrente Morales Torres no nos persuade de variarla.

5. *Cómputo de vacaciones*

El recurrente Morales Torres argumenta que procedía incluir en la determinación del bono las vacaciones acumuladas y licencia por enfermedad. No tiene razón.

El Art. XIX del convenio colectivo vigente a la fecha de la renuncia preceptuaba que: "se considerará como sueldo anual del empleado el que éste devengue del 1ro. de diciembre del año anterior al 30 de noviembre del año en que se pague el bono *hasta la cantidad de ... $19,000 en el año 1981*". Ap. 1, pág. 31. Contrario al argumento, a modo de excepción, el Art. XIX disponía:

> (c) que cuando el empleado se retire para acogerse a una de las pensiones del Sistema de Retiro del Gobierno o se retire por incapacidad, tendrá derecho a que: (1) se le pague el bono en forma proporcional a los salarios devengados hasta la fecha en que se retire, aunque no haya trabajado los seis (6) meses que requiere la ley y (2) para los efectos de computar el pago se incluyan los días por vacaciones regulares y licencia por enfermedad que se liquiden, entendiéndose que el sueldo a considerarse para ese año no podrá exceder del máximo del sueldo anual establecido en este párrafo. Ap. 1, pág. 31.

Obviamente la regla general era que el bono de Navidad sería computado a base del sueldo del empleado. Solamente cuando éste se retirara para acogerse al *Sistema de Retiro* del gobierno o por *incapacidad* serían incluidas, como parte del sueldo, las licencias por vacaciones y por enfermedad, según lo dispone el convenio.

### 6. *Distribución de responsabilidad*

Hemos visto cómo la Junta en sus conclusiones de derecho encontró al patrono y a la Unión incursos en violaciones al convenio colectivo y a la ley. Según expusimos recientemente en *J.R.T.* v. *Unión de Tronquistas,* 117 D.P.R. 790 (1986) —en atención a los principios esbozados en *Vaca* v. *Sipes,* 386 U.S. 171 (1967), y *Bowen* v. *United States Postal Service,* 459 U.S. 212 (1983)— dicho foro distribuyó la responsabilidad.

 Su actuación fue correcta. Sigue la norma establecida que ordena tal distribución allí donde la Unión ha contribuido a los daños sufridos por el obrero. En el caso de autos, la Junta determinó, al sopesar los intereses envueltos y el daño, que el patrono respondería por el 70% de la partida concedida y la Unión por el 30%. Véase C.J. Morris, *The Developing Labor Law,* 2da ed., Washington D.C., B.N.A., 1983, Vol. II, pág. 1354.

### 7. *Reclamo de violación de los Arts. 5(1) y 6, Sec. 4(a) de la ley y convenio colectivo, respectivamente*

El error no fue cometido. Tras un exhaustivo análisis de los hechos, la Junta determinó que la Autoridad y la Unión no violaron las disposiciones citadas por el recurrente. Debemos confirmarla. Además, es inconsecuente la caracterización y clasificación al respecto. La Junta reconoció a Morales Torres sus derechos y remedió el agravio. La sensación que aflora de sus planteamientos es un apetito voraz económico, de desmedidamente

pretender lograr más indemnización de la que legal y razonablemente era y es acreedor.

*Se dictará sentencia que confirme el dictamen de la Junta.*

El Juez Asociado Señor Hernández Denton se inhibió.