JOSÉ A. ORTIZ HERNÁNDEZ, demandante y recurrido, *v.* AUTORIDAD DE EDIFICIOS PÚBLICOS y su JUNTA DE APELACIONES, demandadas y recurrentes.

*Número:* CE-87-440 *Resuelto:* 30 de junio de 1988

*Rafael Vázquez Colón,* abogado de las recurrentes; *Sabino Cotto Cruz,* abogado del recurrido.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del Tribunal.

A petición de la Autoridad de Edificios Públicos (Autoridad), una corporación pública del Estado Libre Asociado creada mediante la Ley Núm. 56 de 19 de junio de 1958 (22 L.P.R.A. sec. 901 y ss.), revisamos la sentencia dictada por el Tribunal Superior, Sala de Bayamón, que a su vez revocó, a instancias del empleado José A. Ortiz Hernández, una resolución de la Junta de Apelaciones de la Autoridad (Junta) y le ordenó a la recurrente satisfacer al empleado la suma de $1,800 en pago de honorarios de abogado.[1]

---

[1] Esta Junta de Apelaciones de la Autoridad (Junta) está regida por el Art. IX, Sec. 5(5) del Reglamento de Personal de la Autoridad de Edificios Públicos (Autoridad) y se creó para intervenir en "controversias que envuelvan despidos, destituciones, descensos y acciones disciplinarias por alegados motivos políticos,

## I

El 9 de septiembre de 1985 el Director Ejecutivo de la Autoridad remitió al Sr. José A. Ortiz Hernández una carta de amonestación por motivo de un incidente entre Ortiz Hernández y el Sr. Radamés Mendoza Hernández.

El 26 de septiembre de 1985 el empleado afectado apeló a la Junta para alegar que:

1. En la carta que se me envió se me está amonestando y no se me están indicando mis derechos.

2. La forma irregular en que se me [sic] llevó a cabo la investigación de los hechos que se me acusan.(²)

El 13 de noviembre de 1985 el Director de la Oficina de Personal le comunicó que, por motivo de la amonestación, la agencia se veía imposibilitada de considerarlo para aumento por mérito para el período evaluativo 1984–1985.

Esta acción de personal fue hecha parte de la apelación. Ya iniciados los trámites, mediante documento presentado el 18 de julio de 1986, se solicitó enmendar el escrito apelativo para "que se adicione que solicita el pago de una suma razonable de honorarios de abogado".

La Junta celebró vistas públicas los días 8, 29 y 31 de julio de 1986. En su decisión de 19 de septiembre de 1986 la Junta llegó a las determinaciones de hecho siguientes:

El primero de [a]gosto de 1985 se suscitó un incidente entre el Sr. José A. Ortiz Hernández y el Sr. Radamés Mendoza Hernández, ambos empleados de la AEP, en las Oficinas Centrales del Area de Conservación, ubicadas en el piso (6), Edificio Norte del Centro Gubernamental Minillas, en Santurce.

---

religiosos o de violación de los reglamentos y procedimientos adoptados por el Director Ejecutivo y la Junta de Directores". Apéndice 3, pág. 13.

(²) Este escrito fue presentado por derecho propio. Posteriormente envió otro en que añadía que la investigación fue también viciada y parcializada en su contra. El 1ro de octubre de 1985 el licenciado Cotto Cruz asumió la representación legal del apelante ante la Junta. Este abogado también lo representó en el caso judicial.

Surge de los autos del caso y de la propia vista que el Sr. Ortiz Hernández le indicó al Sr. Mendoza Hernández la frase "Compañero usted está del carajo" y el Sr. Mendoza Hernández molesto, le contestó "Para el carajo se va usted".

Que el Sr. Mendoza Hernández recurre el mismo 1ro. de [a]gosto, mediante comunicación escrita, a la Oficina de Personal y solicita una investigación sobre el incidente acusando al Sr. Ortiz Hernández de haber usado un lenguaje soez en la oficina.

Que la Oficina de Personal procedió con una investigación administrativa de los sucesos, conduciendo la misma el señor Fernando Valls Ferrero, Técnico de Relaciones Industriales estando también presente el Sr. Jorge Martínez González, Técnico de Relaciones Industriales y el Ing. Enrique Guzmán Vidal, quien para la fecha del incidente actuaba como Director Interino del Area de Conservación e Ingeniería de Seguridad, donde ocurrió el incidente.

Que durante la vista del caso, aunque se reconoció por los representantes de la Oficina de Personal que conforme al Reglamento de Personal la investigación inicial debió hacerse al nivel del Departamento u Oficina donde ocurrieron los hechos, el Ing. Guzmán Vidal solicitó de la Oficina de Personal que efectuaran la misma conjuntamente y que ellos (los funcionarios de Personal) tomaran la iniciativa de rendir el informe y recomendaran las medidas que fueran pertinentes.

Que el informe de la investigación administrativa fue preparado, fechado el 22 de agosto de 1985, suscrito únicamente por el Sr. Valls Ferrero con la recomendación de que la Oficina de Personal considerara el realizar una reunión administrativa donde se le permitiera a los empleados envueltos en el incidente a confrontarse con los testimonios y pruebas presentadas por la otra parte.

Que el Director de la Oficina de Personal usando la discreción que le otorga el Reglamento consideró una nueva investigación y procedió a someter el caso al Sr. Director Ejecutivo de la AEP.

Que durante la vista del caso surgieron los siguientes hechos:

1. Que la AEP tiene un sistema de evaluación para los empleados no unionados que consta de trece (13) criterios o fac-

tores y que cada uno de estos criterios o factores tiene cinco (5) valores o grados y la puntuación final en porciento(%).

2. Mediante Resolución de la Junta de Directores (la [Núm.] 337 del 3 de septiembre de 1985) y conforme a la aclaración hecha a la misma en fecha que no consta pero que responde a una petición del Director de la Oficina de Personal y Relaciones Industriales del 22 de octubre de 1985, y la cual cubre el caso del apelante, los aumentos de sueldo por mérito para los empleados no unionados se considerarán tomando en consideración los siguientes criterios:

a. Eficiencia
b. Buena conducta
c. Asistencia al Trabajo

3. En el testimonio prestado a esta Junta por la actual Directora de Personal, quien para la fecha en que ocurrieron los hechos estaba a cargo de pasar juicio sobre la concesión de los aumentos de sueldo por mérito, declaró que a base de los tres (3) criterios establecidos por la Junta de Directores, la Oficina de Personal desarrolló un Cuestionario de Evaluación para medir la eficiencia, a base de los trece (13) criterios o factores mencionados antes. Para medir la buena conducta se usa la violación a las normas de conducta conforme lo define el Reglamento de Personal y en cuanto a asistencia, el r[é]cord de asistencia y tardanzas. Declaró, [a]demás, que había tres (3) condiciones en las cuales un empleado *no* podía tener derecho a un aumento por mérito.

1. Que no cumpliera con el requisito de eficiencia, o sea, que obtuviera menos de 70% en la evaluación como puntuación final.

2. Que incurriera en algún tipo de conducta que violentara las normas de disciplina de la Agencia.

3. Que se hubiese procedido contra el empleado por haber incurrido en ausencias o tardanzas frecuentes.

Informó tambi[é]n la Directora de Personal que a[u]n cuando la Junta de Directores se limitó a señalar los tres (3) criterios sin directrices adicionales, fue la Oficina de Personal la que reglamentó las normas para administrar la concesión de esos aumentos por mérito y decidió que con que uno de ellos no se cumpla el empleado pierde el paso por mérito. Suponemos que el poder de reglamentar esas normas fue dele-

gado por el Director Ejecutivo, porque es en él donde reside dicha facultad. Sin embargo, la misma Directora de Personal admitió que no están escritas y por lo tanto nunca han sido publicadas, aunque añadió que son conocidas en términos generales cuando la gente pregunta [. . .] o sea, a base de orientación individual cuando un empleado pide información.

Declaró también la Directora de Personal que irrespectivamente de la puntuación final sobre 70% que obtenga un empleado gerencial en su informe de evaluación correspondiente, sería inelegible para recibir el paso por mérito [si no] reúne los otros dos criterios uno de los cuales —asistencia— figura como criterio en el mismo informe de evaluación.

Que el Director Ejecutivo se comunicó con el Sr. Ortiz Hernández el 9 de septiembre de 1985, en relación con los hechos del caso y como consecuencia el 13 de noviembre de 1985, se le niega un paso por mérito aún habiendo obtenido una evaluación de 90%. Apéndice 4, págs. 18–21.

A base de dichas determinaciones, la Junta concluyó que la carta de 9 de septiembre de 1985 constituía una amonestación y que el Director Ejecutivo actuó conforme a su criterio y discreción al escribirle sobre el incidente. En cuanto a la negativa a concederle el paso de aumento por mérito concluyó que:

No hay duda que los aumentos de salarios deben concederse como resultado de una evaluación científica, basada en criterios objetivos, medibles y meridianamente claros para todos los empleados y los evaluadores. Pero es además, absolutamente necesario que [e]stos criterios y forma de medición as[í] como el impacto que tendrá la evaluación en la condición del empleado evaluado, sea plenamente y claramente comprendida tanto por el evaluado como por el evaluador y esto s[ó]lo puede conseguirse mediante la publicación y difusión de las normas si posible a todos y cada uno de los empleados.

Está claro del r[é]cord de la vista, que existe un Informe de Evaluación que se hace para los aumentos de salario por mérito a concederse anualmente pero en dicho informe no se le advierte al evaluado que no importa la puntuación de 70% o más que obtenga en su puntuación final, no recibirá el au-

mento por mérito si no cumple con los requisitos exigidos por los tres (3) criterios indicados por la Junta de Directores a pesar de que de dicho Informe de Evaluación se obtiene la información para medir dos (2) de los tres (3) criterios: el criterio de eficiencia y el de asistencia.

También el r[é]cord de la vista demuestra que las normas adoptadas por la Oficina de Personal para reglamentar la concesión de aumentos de sueldo por mérito nunca se han publicado y por consiguiente, si no se han publicado, no pueden haberse difundido, ni circulado entre los empleados, que son los interesados. Estos se enteran mediante orientación individual, cuando preguntan. Por tanto, las normas que van a decidir verdaderamente si se recibe o no el aumento de sueldo anual no son de conocimiento general. Podría decirse usando un término de derecho administrativo que no se observa el debido proceso de ley al no existir la notificación correspondiente. Esta ausencia de publicidad y difusión contrasta, por el contrario, con el Informe de Evaluación. Este Informe es del conocimiento general de todos los empleados, a pesar de que como hemos indicado antes, el mismo pretende conllevar una suposición de elegibilidad cuando esta evaluación no es realmente determinante de por s[í].

Esta ambivalencia crea confusión e inseguridades y siembra dudas, no s[ó]lo sobre la legitimidad de cada acción sino sobre la validez de la decisión en general, además de causar malestar y disgusto entre los empleados.

Y para concluir, a pesar de que el Apelante fue amonestado, vistas las discrepancias existentes en los mecanismos para la evaluación de los empleados en lo que se refiere a aumentos de sueldo por mérito y al hecho aceptado por la propia Directora de Personal de la AEP de que las normas existentes no se han publicado ni son del conocimiento general de los empleados, entendemos que no es justo, ni razonable que se prive al Apelante de un aumento de sueldo por mérito bajo las condiciones antes expuestas.

Esta Junta reconoce la buena intención que anima a su Director Ejecutivo y a su cuerpo de oficiales directivos, y estamos seguros entenderán nuestro propósito al hacer este señalamiento, en aras de lograr la mayor uniformidad, justicia, equidad, armonía, continuidad y satisfacción en los servicios públicos de la AEP. Apéndice 14, págs. 22–24.

Por dichas consideraciones ordenó a la Autoridad que reconociera el privilegio al paso por mérito denegado.(³) En el recurso de revisión presentado en el Tribunal Superior, Sala de Bayamón, al amparo del inciso (13) de la Sec. 5 del Reglamento de Personal de la Autoridad, el empleado solicitó que el tribunal invalidara todo el proceso administrativo por razón de la violación a su derecho constitucional a un debido proceso de ley o, en su defecto, que se eliminara la carta de amonestación, que se le concediera honorarios de abogado y que se impusiera al patrono el pago de intereses legales sobre el ajuste salarial. El tribunal expidió el auto de revisión solicitado.

En los méritos rechazó el planteamiento sobre violaciones al debido proceso de ley. Asimismo resolvió que la amonestación estuvo ampliamente sostenida por la prueba. Accedió al pedido de que se siguiera la práctica administrativa de la agencia y se eliminara dicha amonestación de su expediente personal por haber transcurrido más de un (1) año desde el incidente. En lo que atañe a este recurso resolvió que:

> La procedencia de honorarios de abogad[o] está sostenida por las disposiciones de la Ley de Reclamaciones por Servicios Prestados, según enmendada en 1980, (32 LPRA 3111 y ss.) donde se establece la política pública del Estado Libre Asociado de Puerto Rico de que la compensación que reciba el obrero no sea reducida por el pago de servicios profesionales a su representante legal. Específicamente dentro de la definición de patronos obligados por la ley se incluye a las Autoridades y Corporaciones Públicas y sus representantes. Véase también, *Colón Molinary v. A.A.A.*, 103 DPR 143 (1974). La concesión de honorarios descansa en la sana discre[c]ión del tribunal. Consideramos razonable, atendiendo todos los procedimientos de este caso, la cantidad de $1,800.00.

---

(³) También ordenó que se preparara un reglamento para establecer el procedimiento para la concesión de paso por mérito a empleados gerenciales.

La procedencia del interés legal sobre la cuantía del ajuste salarial por el aumento de mérito denegado, está ampliamente sostenida por nuestra jurisprudencia. Ver *Municipio Mayag[ü]ez v. Rivera*, 113 DPR 441 (1982) y casos allí citados.

Por los fundamentos antes señalados revocamos la resolución de la Junta de Apelaciones de la Autoridad de Edificios Públicos del 19 de septiembre de 1986, a los siguientes efectos. Se le ordena a la Autoridad a remover la carta de amonestación del expediente del recurrente, se le concedan intereses sobre el ajuste salarial computados desde la fecha en que la Junta emitió su resolución y satisfaga $1,800.00 de honorarios de abogado. Apéndice 1, págs. 5–6.

En su recurso ante nos, la Autoridad plantea las cuestiones de derecho siguientes:

A. Erró el Tribunal de Instancia al resolver la procedencia de honorarios de abogado a tenor con las disposiciones de la Ley 402 de 12 de mayo de 1950 según enmendada en un recurso de revisión implícita de una determinación administrativa.

B. En la alternativa, en el supuesto que la Ley 402, *supra* fuera de aplicación, la referida disposición fue aplicada erróneamente po[rq]ue el recurrido no prevaleció en su reclamación.

C. En la alternativa el Tribunal de Instancia abusó de su discreción al imponer una suma excesiva de honorarios de abogad[o].

## II

El primer planteamiento del patrono es altamente confuso. Parte de la premisa de que los honorarios de abogado se le impusieron a la Junta por razón de su decisión. Está equivocado. Los honorarios de abogado están predicados en las supuestas actuaciones erróneas de la propia Autoridad. Veamos si ésta responde.

■ La Autoridad de Edificios Públicos es una corporación pública que puede demandar y ser demandada. Ley Núm. 56 de 19 de junio de 1958 (22 L.P.R.A. sec. 906(4)). El

Art. 2 de esta ley, según enmendada por la Ley Núm. 90 de 3 junio de 1980 (32 L.P.R.A. sec. 3115) dispone que, para los efectos de las secs. 3114 a 3117 de dicho título, "la palabra 'patrono' incluirá a las autoridades y corporaciones públicas del Gobierno Estadual . . .". El derecho a honorarios de abogado surge "[e]n todo caso radicado ante los tribunales de Puerto Rico por un trabajador o empleado en que se reclame cualquier derecho o suma de dinero contra su patrono, al amparo de la legislación laboral federal o local o convenio de trabajo de naturaleza individual o colectivo y en que se conceda la reclamación en todo o en parte . . .". 32 L.P.R.A. sec. 3115.

 Si bien es cierto que aquí no se reclamó bajo un convenio colectivo o la legislación laboral clásica, los remedios concedidos por el tribunal emanan de su interpretación del reglamento de personal que cubre a los empleados gerenciales de la Autoridad y de la práctica administrativa. El reglamento y el sistema de mérito que regula es parte del contrato de trabajo de los empleados. En el lenguaje de la ley es un "convenio de trabajo de naturaleza individual". 32 L.P.R.A. sec. 3115.

El reglamento de personal sustituye el procedimiento clásico de arbitraje, o la alternativa de ir directamente al foro judicial, por el de una revisión ante la Junta.

En *Colón Molinary v. A.A.A.*, 103 D.P.R. 143, 159–160 (1974), resolvimos que:

> Aun cuando hemos fallado que no es de aplicación al caso que nos ocupa lo preceptuado en el Art. 13 de la Ley Núm. 379 y en la Sec. 30 de la Ley de Salario Mínimo —y no obstante no ser propiamente una reclamación de una deuda por servicios prestados— la política pública que inspira la legislación sobre honorarios de abogado y nuestras decisiones al efecto equiparando un laudo arbitral a una adjudicación judicial, nos llevan a concluir, que de ordinario, procede la imposición de honorarios en casos en que el obrero tiene que acudir al foro sustitu-

tivo del judicial a hacer valer sus derechos. De tal resultado no estaría normalmente exenta la Autoridad pues el Art. 2 de la Ley Núm. 402 la considera comprendida en la definición de Patrono. (Escolio omitido.)

Esta norma fue recientemente seguida por este Tribunal en *Morales Torres v. J. R. T.*, 119 D.P.R. 286 (1987).[4] Véanse, además: *Morales González v. J. R. T.*, 121 D.P.R. 249 (1988); *Municipio de Mayagüez v. Rivera*, 113 D.P.R. 467, 472 (1982).

■ Por las anteriores consideraciones resolvemos que la Autoridad no está exenta del pago de honorarios de abogado en los casos presentados ante la Junta y el foro judicial. Ello es cónsono con la política pública de que los empleados privados y de corporaciones públicas no tengan que pagar de su propio peculio los honorarios de su abogado.[5]

## III

La Autoridad sostiene que no proceden los honorarios de abogado, porque el empleado recurrido no prevaleció en toda o en parte de la reclamación. Dicha contención es claramente frívola. El tribunal concedió parte sustancial de los remedios solicitados, a saber: (1) la eliminación de la carta de amonestación del expediente de personal; (2) la imposición de intereses, y (3) la concesión de los honorarios de abogado solicitados. Por lo que no incidió el tribunal al resolver que procedía una condena al pago de honorarios de abogado.

---

[4] En el caso ante nos, no está presente la norma de excepción fundada en la doctrina de inmunidad soberana de que no procede la imposición de honorarios e intereses por temeridad contra el Estado. Véase *Catalytic Ind. Maint. Co. v. F. S. E.*, 121 D.P.R. 98 (1988).

[5] Por no estar propiamente ante nos, es innecesario pronunciarnos sobre la interrogante levantada por la recurrente de si proceden honorarios de abogado en los casos originados ante la Junta de Apelaciones del Sistema de Administración de Personal (J.A.S.A.P.).

## IV

Le asiste la razón a la Autoridad en su último planteamiento. Bajo las circunstancias presentes, el tribunal abusó de su discreción al imponer una suma excesiva de honorarios de abogado. Volvemos a *Colón Molinary v. A.A.A.*, supra, pág. 106, donde resolvimos que:

Sin embargo, preciso es destacar que al igual que las acciones ventiladas en el escenario judicial, la cuantía de honorarios a ser impuesta dependerá de la naturaleza del asunto y demás factores y criterios desarrollados en nuestra jurisprudencia, y ello bajo un sano ejercicio discrecional del árbitro.

La norma que adoptamos debe tener efectos prospectivos en lo que se refiere a honorarios de abogado en los procedimientos de arbitraje. No es extensiva a situaciones en que un laudo reconoce que el patrono estuvo justificado en imponer medidas disciplinarias —por haberse demostrado la ocurrencia de los hechos que dan margen a la misma— y el dictamen meramente sustituye o varía la severidad de la sanción. *Contrario sensu*, si el laudo exonera totalmente al obrero o empleado, el árbitro conserva la facultad discrecional para fijar honorarios. En armonía con lo dispuesto, en vista de la conclusión expresada en el laudo de que la Autoridad estuvo justificada en suspender a los peticionarios, no procede la condena de honorarios de abogado en dicha etapa como tampoco ante este foro.

Aunque el empleado prevaleció ante el tribunal, su éxito fue parcial y limitado. Bajo las circunstancias presentes estimamos razonable la cantidad de $500 como pago por honorarios de abogado.

*Se dictará sentencia de conformidad con lo aquí expuesto.*

El Juez Asociado Señor Negrón García concurre con el resultado sin opinión escrita. La Juez Asociada Señora Naveira de Rodón está conforme con las partes I, II y III de la opinión y disiente de la parte IV, ya que rebajaría la cuantía otorgada como honorarios de abogado. El Juez Asociado Señor Hernández Denton disiente sin opinión escrita.