Colón Birriel, Juez Ponente
*788 TEXTO COMPLETO DE LA SENTENCIA
I
Alfredo Camacho Rosado, Luz D. Santiago Pérez y la Sociedad Legal de Bienes Gananciales compuesta por ambos (los “apelantes”) solicitan la revocación de una Sentencia dictada por el Tribunal de Primera Instancia, Sala Superior de Utuado (el “TPI”) el 24 de octubre de 2002, archivada en los autos copia de su notificación el 30 de ese mes y año, en el caso Autoridad de Energía Eléctrica de Puerto Rico v. Alfredo Camacho Rosado, Luz D. Santiago Pérez y la Sociedad Legal de Bienes Gananciales compuesta por ambos, Civil Núm. L PE2002-0032, sobre: Solicitud de Interdicto Permanente, Ley 83 de 2 de mayo de 1941. El dictamen ordenó a los apelantes, cesar, desistir y abstenerse de estacionar cualquier vehículo de motor sobre un hueco que hiciera la Autoridad de Energía Eléctrica en la acera de la vía pública frente a su propiedad, ubicada en la carretera Núm. 123 kilómetro 56.5 del Municipio de Utuado. Se les condenó al pago de $7,470, en concepto de los gastos incurridos por la Autoridad de Energía Eléctrica, las costas, gastos del litigio y $1,000 por concepto de honorarios de abogado.
Oportunamente, los apelantes solicitaron reconsideración y determinaciones de hechos adicionales. Por su parte, la AEE se opuso a lo solicitado. Posteriormente, el 26 de noviembre de 2002, notificada el 2 de diciembre, el TPI declaró No Ha Lugar a la reconsideración y a las determinaciones de hechos adicionales.
Por su parte, la Autoridad de Energía Eléctrica (la “AEE’) presentó su oposición a la apelación. Resolvemos con el beneficio de los escritos y la Exposición Narrativa Conjunta de la Prueba (ENP).
II
El caso comienza el 13 de agosto de 2002, con una Petición de Interdicto bajo juramento, presentada por la AEE contra los apelantes bajo las disposiciones de la Ley Núm. 83 de 2 de mayo de 1941, 22 L.P.R.A. §191 y siguientes, conocida como la Ley de la Autoridad de Energía Eléctrica.
' La AEE alegó, en lo pertinente, que estaba autorizada por ley a reglamentar el uso, consumo, intervención y manipulación de la energía eléctrica y los equipos, empresas, alambres, contadores, transformadores y objetos de *789 cualquier naturaleza análoga de su propiedad, utilizados en relación con la producción, transmisión, distribución, uso y consumo de energía eléctrica; como parte de su programa de mejoras al sistema de transmisión y distribución, estaban haciendo mejoras a las líneas del tendido eléctrico a lo largo de la Carretera Estatal Núm. 123 en el Municipio de Utuado a un costo de $100,000 a ser erogados de fondos públicos; se sustituirían postes de madera de más de treinta (30) años por postes de hormigón; los apelantes le impedían llevar a cabo las referidas mejoras, toda vez que estacionaban sobre la acera de la referida carretera donde hicieron el hoyo para uno de los postes, un vehículo de motor marca Mitsubishi, modelo Montero, tablilla AEB-161, lo que impedía a sus brigadas de construcción instalar el poste de hormigón requerido para el diseño de la línea eléctrica; el estacionamiento del vehículo en la acera violaba el Artículo 6.19 de la Ley de Vehículos y Tránsito, Ley Núm. 22 de 7 de enero del 2000, 9 L.P.R.A. § 2001 y siguientes; y tener derecho a una servidumbre de paso por el transcurso de 20 años al amparo de la Ley Núm. 143 de 20 de julio de 1979, 27 L.P.R.A. § 2151 y siguientes.
Solicitaron, se expidiera una orden de entredicho, de interdicto preliminar y de interdicto permanente dirigida a los apelantes para que cesaran y desistieran inmediatamente de estacionar su vehículo de motor o cualquier otro, sobre el área de la acera, en particular en el área donde excavaron el hoyo para instalar el poste; le ordenare a los apelantes abstenerse de violar sus derechos conferidos en la sección 14 de la referida Ley Número 83, 22 L.P.R. A. § 204; y le impusiera el pago de gastos, costas y honorarios de abogado por temeridad ante la negativa a cesar y desistir después de ser advertidos de los derechos de la AEE mediante la querella número 2002-90.
Por su parte, los apelantes presentaron un escrito titulado Comparecencia Especial, Moción Prórroga y Nulidad del Emplazamiento en el que, sin someterse a la jurisdicción, solicitaron se anulara el emplazamiento, pues el mismo había sido entregado al hijo menor de edad del matrimonio. Añadieron que nunca se había instalado un poste próximo a la colindancia de su propiedad, sino al otro lado de la carretera; que la AEE estaba variando el curso de la servidumbre de paso, que alegaba, cuando cambió de lugar el poste que estaba al otro lado de la carretera, intentando instalarlo o hincarlo en el frente inmediato de su propiedad; que tenían árboles sembrados que se elevaban por más de 40 pies de alto, los que se afectarían por la ubicación de las líneas; y que la AEE estaba constituyendo una servidumbre de paso de tendido eléctrico sobre su propiedad, sin su autorización y sin compensación, gravando indebidamente su propiedad. Apelación, Comparecencia Especial..., a las págs. 21-23 del apéndice.
Posteriormente, la AEE solicitó se dispusiera de la controversia mediante sentencia sumaria. Apelación, Moción en Solicitud de..., a las págs. 26-40 del apéndice. A lo que se opusieron los apelantes. Apelación, Oposición a Solicitud de Sentencia Sumaria, a las págs. 41-43 del apéndice. El TPI decidió celebrar una vista señalándola para el 18 de septiembre de 2002. En esa ocasión determinó que los apelantes habían sido emplazados correctamente. Conforme a la Exposición Narrativa Conjunta (ENC), en la vista testificaron por parte de la AEE, el Ingeniero Francisco Marín Rodríguez y el ingeniero Harry Lugo Cortés. Por los apelantes, testificó el señor Alfredo Camacho Rosado. A continuación lo declarado:
1. Testimonio del Ingeniero Francisco Marín Rodríguez:
(a) en el interrogatorio directo de la AEE declaró: que llevaba ocho (8) años trabajando en la AEE y desde el 1997 ocupa el puesto de Ingeniero de Distrito de Utuado; supervisa y dirige la oficina técnica de la AEE de ese distrito; en su descargo de responsabilidades provee el mantenimiento y la conservación necesaria a las líneas eléctricas, para que así los clientes recibieran energía eléctrica, continuamente y de calidad; está familiarizado con las líneas eléctricas del Municipio de Utuado, por ser el Ingeniero de Distrito y residir en Utuado toda su vida; por la carretera 123 de Utuado discurre una línea de 4,160 voltios; la línea y su infraestructura llevan más de 30 a 40 años de instalada; la línea está siendo rehabilitada; a esos fines coordinó con el Departamento de Obras Públicas, Región de Manatí, quienes le identificaron el lugar donde se colocaría cierto poste de hormigón. Señaló que cuando existe una servidumbre de uso público, se utiliza para la instalación de los postes; de esa forma no se invade terreno privado de ninguna persona; que los postes nuevos se colocaron en la carretera, en dirección de sur *790 a norte, es decir, de Utuado a Arecibo a mano derecha de la carretera. Para completar los trabajos de rehabilitación de la línea, faltaba instalar un poste. Camacho (el coapelante), alegó que el lugar donde se instalaría el poste era de su propiedad. Ante esa situación solicitó una certificación del Departamento de Obras Públicas donde el lugar en que se iba a instalar el poste era una servidumbre destinada a uso público. (ENC, págs. 1- 2)
b) en el contrainterrogatorio por la representación de los apelantes declaró: que el Sr. Alfredo Camacho envió una carta a la AEE oponiéndose a que se instalara un poste frente a su propiedad; que en ese lugar no vio árboles, sí en la carretera: observó un vehículo propiedad del Sr. Camacho estacionado sobre el lugar en que se iba a instalar el poste, impidiendo así completar el proyecto; el problema de las líneas y los cables podría ser que los vientos provocaran que el árbol tocare las líneas, lo que ocasionaría la suspensión del servicio; el tendido eléctrico no afectaba las propiedades privadas; que los cuadros en el croquis del proyecto representaban el lugar en que se instalarían los postes de hormigón, y los puntos, los postes de madera existentes; al frente de la casa del Sr. Camacho no había un poste de madera; y se llamó a la policía para que interviniera con el Sr. Camacho por estar violando la Ley de Tránsito, pero no expidieron boleto alguno. (ENC, págs. 2-3)
2. Testimonio del Ingeniero Harry Lugo Cortés:
(a) en el interrogatorio directo de la AEE declaró: que se desempeña como Superintendente de Construcción de Líneas y Subestaciones Región de Arecibo; hace 18 años que trabaja en esa región y 26 años en la AEE; que por la carretera 123, en la Barriada Nueva del Barrio Santo Abajo del Municipio de Utuado, discurre un alimentador conocido como el 8402; el alimentador es la línea construida para la distribución eléctrica primaria a los fines de poder distribuir energía eléctrica; como parte del programa de mejoras capitales de la AEE, se está reconstruyendo la línea; se están instalando postes de mayor altura y un conductor de calibre más alto (266).
La remodelación de la línea consistió en la instalación de postes de cemento de 45 pies en el tramo que discurre la línea, y el cambio del conductor por uno de mayor calibre; el costo de las mejoras para el año 2002-2003 es de aproximadamente $100,000 y su costo total fluctúa de $200,000 a $300,000; cuando la Sección de Construcción y Mejoras asumió la responsabilidad del proyecto, instalaron los postes restantes; cuando fueron a hacer el cambio del conductor, se detuvieron, porque encontraron que hacía falta la instalación de un poste de 45 pies para poder completar la instalación de los postes, el que no han podido instalar por la objeción del Sr. Camacho; el poste en ese lugar es importante por requerirlo los “estándares” de construcción (normas y procedimientos establecidos de acuerdo al Código Nacional Eléctrico y a las Reglas del Código Eléctrico de Puerto Rico), dado el calibre del conductor, para así evitar el peligro que conlleva que la línea pueda bajarse y ocasionar un peligro por los vientos o por carga excesiva; el tramo de distancia entre los dos postes existentes sobrepasa los “estándares” de construcción, lo que provoca que la línea no tenga soporte y esté propensa a que por las condiciones climatológicas peguen entre sí, produciendo un corto circuito provocando que la línea pueda caerse al suelo.
El Reglamento establece claramente que las construcciones eléctricas deben mantenerse en una dirección donde todos los postes se mantengan en un lado de la carretera, así como el proceso de cómo se enclavan esos postes de acuerdo al solar y las colindancias. Declaró sobre los daños que sufrió la AEE por no haber podido instalar el poste, tales como pagarle en varias ocasiones a las brigadas, los salarios, dietas y los gastos correspondientes, sin que hubiesen realizado labor alguna. El estimado de esos gastos era entre $7,000 a $8,000; el estimado lo preparó el Ingeniero Víctor Cruz Méndez de la Sección de Superintendencia de Construcción, con los datos de campo que él le proveyó. (ENC, págs. 3-5)
b) en el contrainterrogatorio por la representación de los apelantes declaró: que bregó con la información del personal y el equipo, y suplió como dato el total de las cantidades sobre dietas y transporte; el ingeniero Cruz lo que hizo fue recopilar a máquina y pasar los cómputos del parte diario; el proyecto se detuvo por la falta del poste; que en el croquis que él preparó de la línea que está en la carretera 123, solamente dibujó los postes *791 primarios; del expediente que recibió, se establece que el lugar donde se marcó el poste es de uso público de la carretera; desconocía sí la verja del Sr. Camacho estaba en propiedad pública o en su propiedad; y que la propiedad de Camacho no se afectaba en nada por la instalación del poste. (ENC, a las págs. 5-6)
Con ese testigo finalizó la prueba de la AEE.
Prueba de los apelantes:
1. Testimonio del señor Alfredo Camacho:
(a) En el interrogatorio directo por parte de la representación de los apelantes declaró: que es casado con Lizzette Santiago Pérez, reside en el Barrio Salto Abajo, Carretera 123, Antigua Carretera 10, kilómetro 56.5; su propiedad consta de dos (2) solares de aproximadamente dos mil (2,000) metros; sus solares están limitados por la carretera 123 y el río; el solar donde reside es casa y negocio; la zona tiene clasificación RO, y está rodeada de zonas RI, CI y C3; observó que cuando se estaba reconstruyendo el tendido eléctrico, se instalaban los postes de cemento al lado del poste de madera; la AEE excavó un hoyo frente a su residencia para instalar un poste a lo que él se opuso, por razón de que el poste quedaría en medio de su solar. Ofreció varias fotos tomadas por él, las que fueron objetadas por la representación de la AEE; éstas fueron marcadas como ofrecidas, pero no admitidas. Se estipuló por las partes que la Administración de Reglamentos y Permisos concedió el permiso para el negocio de cafetería como variación, pero se mantuvo la clasificación RO de la propiedad. (ENC, págs. 6-7)
b) En el contrainterrogatorio por la representación de la AEE declaró, en lo pertinente: que solicitó un permiso de uso para su propiedad ubicada en la Carretera 123, km. 56.5 del Barrio Salto Abajo de Utuado, zonificación RO. Su representante legal solicitó se tomara conocimiento judicial del Reglamento número 4 de Planificación, que data de los años 50, el que dispone que los patios delanteros en los distritos RO tienen que contener un fondo no menor de cinco metros, razón por la cual el terreno del Sr. Camacho no estaba gravado, sino sujeto a una limitación de propiedad. (ENC, pág. 7)
Luego de concluido los testimonios y la vista, el TPI (Hon. Víctor D. de Jesús Cubano) emitió la sentencia a que hemos hecho referencia al principio.
Oportunamente, los apelantes presentaron su escrito de apelación, en el que hacen los siguientes señalamientos:

“A- Erró el Tribunal al determinar que el poste se podía instalar en la vía en el frente (lado Este de la carretera) a la propiedad de los recurridos, obviando el señalamiento de que la AEE estaba variando la dirección de el [sic] tendido eléctrico y por tanto fuera de la servidumbre de paso a que originalmente hizo alusión y alegó haber adquirido por prescripción.

B- Erró el Tribunal al descartar que con la instalación del poste y los cables eléctricos no establecía o se constituía una servidumbre de paso sobre la propiedad de los Recurridos y al descartar que la ubicación original del poste de madera en el lado opuesto y cruzando la carretera (lado oeste de la carretera) por más de 30 años, como alega la Peticionaria, tuvo el efecto de extinguir la servidumbre de paso que hubiera tenido la AEE si el poste originalmente hubiera estado ubicado donde ahora hoy quieren instalarlo (lado Este de la carretera).

C- Erró el Tribunal al condenar a los Recurridos al pago de la suma de $7,470.00 de gastos que reclamó la Peticionaria cuando no hubo prueba sobre dicho gasto y no se presentó documento o evidencia alguna que sostuviera tal reclamo.

D- Erró el Tribunal al imponer a los Recurridos el pago de $1,000.00 en Honorarios de Abogados [sic] por 
*792
cuanto los recurridos tenían motivos muy reales y verdaderos para defender la integridad de su propiedad contra la imposición de una servidumbre de paso de tendido eléctrico. ”

III
Por estar los primeros dos señalamientos íntimamente relacionados, los discutiremos conjuntamente.
La servidumbre es un gravamen impuesto sobre un inmueble en beneficio de otro perteneciente a distinto dueño. Art. 465 del Código Civil de Puerto Rico, 31 L.P.R.A. §1631. Las servidumbres continuas y aparentes se adquieren en virtud de título, o por la prescripción de veinte (20) años. Art. 473 del Código Civil, 31 L.P.R.A. §1651. Las servidumbres se extinguen por el no uso durante veinte (20) años, a contarse desde el día en que haya tenido lugar un acto contrario a la servidumbre en el caso de las continuas. Art. 482 del Código Civil, 31 L.P.R.A. §1681.
En el caso ante nuestra consideración, la representación de los apelantes alega que la servidumbre que tendría la AEE frente a la residencia se afectó, pues el poste del tendido eléctrico había sido hincado al otro lado de la carretera desde hacía más de veinte (20) años. Por tal razón, alega que al no usar la servidumbre frente a la residencia, la misma se extinguió por el no uso, según contempla el referido Artículo 482. Apelación, a la pág. 8.
Por otra parte, la Ley Orgánica de la AEE le concede el derecho y la facultad para “construir o situar cualquier parte o partes de cualquiera de sus empresas a través, en, sobre, bajo, por o a lo largo de cualquier calle, vía pública o cualesquiera terrenos que sean actualmente, o puedan ser en adelante, propiedad del Gobierno Estadual [sic] o de cualquier municipalidad o subdivisión política del mismo, sin necesidad de obtener franquicia u otro permiso al efecto. ” [Enfasis suplido.] Sección 14, 22 L.P.R.A. §204. Según vemos, la ley le otorga a la AEE una amplia facultad de colocar sus instalaciones en las calles, vías públicas y carreteras de Puerto Rico. Sin embargo, como toda potestad, la misma debe ser ejercida a base de necesidad, con racionabilidad y sensatez, para así evitar el abuso de autoridad.
Por su parte, el Manual de Normas de Distribución Urbano, Reglamento Núm. 2367 de la AEE, aprobado el 15 de mayo de 1978, dispone en cuanto la localización de los postes, en lo pertinente, lo siguiente:

“Cuando sea práctico, los postes serán localizados en el mismo lado de todas las calles... ”.

En la Sentencia dictada por el TPI, en la determinación de hechos número 1, se indica que al reconstruirse la línea se planificó toda en el mismo lado de la carretera número 123; la alegación de los apelantes es incorrecta. Aun si fuera correcta, la AEE tiene la potestad de colocar un poste al lado contrario de la línea cuando sea necesario por consideraciones prácticas, según dispone el Manual de Normas de Distribución Urbana, Reglamento Núm. 2367 de la Autoridad de Energía Eléctrica, radicado el 15 de mayo de 1978 y efectivo el 14 de junio de 1978.
En el caso de autos, de los testimonios de los funcionarios de la AEE surge la necesidad de instalación del poste, necesidad que no fue controvertida por el señor Camacho, según surge de la Exposición Narrativa Conjunta (ENC). A pesar que los apelantes habían indicado en su comparecencia especial previa a la vista de 2 de septiembre de 2002, que podrían presentar “evidencia y testigos” para establecer que la AEE nunca tuvo hincado un poste en la acera inmediatamente al frente de su propiedad “por los últimos treinta (30) años”, dicha prueba no surge de los testimonios vertidos en la vista. (Véase, Comparecencia Especial..., pág. 22 del Apéndice.)
Por otro lado, los apelantes argumentan que tienen en su propiedad árboles que sobrepasan los cincuenta (50) pies de alto, por lo que éstos podrían verse afectados de establecerse el poste en controversia. Aun cuando entendemos la preocupación legítima de los apelantes; sin embargo, dicha situación no puede ser óbice para el establecimiento del tendido eléctrico. Otros árboles podrán ser sembrados en el lado opuesto de la carretera, pues *793 el tendido eléctrico pasará por un sólo lado de la misma.
En consideración a lo expuesto, concluimos que la AEE tiene el derecho y la facultad para colocar los postes y las líneas del tendido eléctrico en cualquier terreno, incluyendo carreteras y aceras, propiedad del Estado Libre Asociado de Puerto Rico o de cualquier municipio. Por lo tanto, los primeros dos errores, no se cometieron.
En el tercer señalamiento, los apelantes le imputan error al TPI al condenarlos a pagar a la AEE la suma de $7,470 de gastos, sin haber prueba para ello. En efecto, de las determinaciones no surge prueba alguna sobre dichos gastos. Sin embargo, de la Exposición Narrativa en Conjunto (ENC) surge que el ingeniero Lugo Cortés declaró que hubo que pagar a las brigadas por los salarios, dietas y gastos correspondientes en que incurrieron tras acudir en varias ocasiones al lugar en controversia sin que pudieran realizar labor alguna. Testificó que el estimado lo había preparado otro ingeniero, siendo el mismo preparado mediante un proceso de sistema mecanizado. Dicho estimado fue entre “$7,000 a $8,000” (Véase ENC, pág. 5).
Por otro lado, una sentencia es distinguible de las determinaciones y las conclusiones de derecho del tribunal, aun cuando estas últimas se incorporen en el mismo documento con la sentencia. Regla 43.2 de Procedimiento Civil (Citas omitidas). Las determinaciones de hechos y conclusiones de derecho constituyen los fundamentos en que apoya el juez la sentencia que emite en el caso. Es sólo la porción o parte dispositiva de la sentencia la que constituye la sentencia; los derechos de las partes son adjudicados, no mediante la relación de los hechos, sino únicamente mediante la parte dispositiva de la misma. (Citas omitidas) En otras palabras, es en la parte dispositiva de la sentencia donde se adjudican y determinan las controversias del caso y donde se definen los derechos de las partes. (Citas omitidas). Siendo ello así, la adjudicación expresa va por encima de, o controla, las meras relaciones de hecho. (Citas omitidas). Cárdenas Maxán v. Rodríguez, 119 D.P.R. 642, 656-657 (1987). En consideración a lo cual, el tercer error no fue cometido.
En su cuarto y último señalamiento, los apelantes señalan que erró el TPI al imponerles mil dólares ($1,000) en honorarios de abogado, aun cuando existían motivos legítimos para defenderse de la controversia en su contra.
En el normativo Fernández Mariño v. San Juan Cement Co, Inc., 118 D.P.R. 713, 717-719 (1987), nuestro Tribunal Supremo hizo numerosas expresiones en torno a los honorarios de abogado y su procedencia. Veamos.
La imposición de honorarios de abogado es discrecional, Raluan Corp. v. Feliciano, 111 D.P.R. 598 (1981), pero la Regla 44.1(d) de Procedimiento Civil [32 L.P.R.A. Ap. III], es clara en el sentido de que cuando una parte ha procedido con temeridad, el tribunal deberá imponerle en su sentencia el pago de una suma por concepto de honorarios de abogado. Determinada la existencia de temeridad, la condena de honorarios es imperativa. [Citas omitidas.]
El concepto “temeridad” no está expresamente definido por la Regla 44.1(d) de Procedimiento Civil.
Un comentarista ha dicho que la “temeridad” es una actitud que se proyecta sobre el procedimiento y que afecta el buen funcionamiento y la administración de la justicia. También sujeta al litigante inocente a la ordalía del proceso judicial y lo expone a gastos innecesarios y a la contratación de servicios profesionales, incluyendo abogados, con el gravamen a veces exorbitante para su peculio. H. Sánchez, Rebelde Sin Costas, 4(2) Boletín Judicial 14 (1982).
En el referido caso se resumieron —citando jurisprudencia previa — , las instancias bajo las cuales existe temeridad, a saber: 1) si el demandado contesta una demanda y niega su responsabilidad total, aunque la acepte posteriormente; 2) si se defiende injustificadamente de la acción; 3) si la parte demandada en efecto cree que la cantidad reclamada es exagerada y esa es la única razón que tiene para oponerse a las peticiones del demandante y no admite francamente su responsabilidad limitando la controversia a la fijación de la cuantía a ser concedida; 4) *794 arriesgarse a litigar un caso del que se desprendía prima facie su responsabilidad, y 5) negar un hecho que le conste es cierto a quien hace la alegación. [Citas omitidas.] La imposición de honorarios de abogado persigue idénticos propósitos: disuadir la litigación y alentar transacciones. Fernández, pág. 719.
La partida de honorarios de abogado concedida no se variará en apelación, a menos que la misma sea excesiva, exigua o constituya un abuso de discreción. Ramírez Anglada v. Club Cala de Palmas, 123 D.P.R. 339, 350 (1989).
Para conceder una suma por honorarios de abogados, no es necesario que la parte a cuyo favor se concede haya prevalecido totalmente. Es suficiente que prevalezca parcialmente. Ortiz Hernández v. Autoridad de Edificios Públicos, 121 D.P.R. 896 (1988).
Ante los preceptos que hemos señalado y los hechos y circunstancias del caso, a nuestro juicio, no proceden los honorarios fijados por el TPI en el presente caso. Los apelantes protestaron la instalación del poste del tendido eléctrico basándose en que el mismo se estaba instalando en el lado opuesto de la carretera por donde transcurría el resto del sistema. Además, entendieron que como la servidumbre de la AEE se había extinguido por el no uso de más de veinte (20) años, el instalar el poste frente a su residencia constituiría un gravamen a su residencia. En consideración a lo cual, no vemos que los apelantes hayan actuado con temeridad. Por lo tanto, les asiste la razón en cuanto a que la imposición de los honorarios de abogado es improcedente.
En mérito a lo expuesto, dejamos sin efecto aquella parte de la sentencia dictada por el TPI el 24 de octubre de 2002 mediante la cual se impuso honorarios de abogado a los apelantes y así modificada la confirmamos.
Así lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida I. Oquendo Graulau
Secretaria General