Bajandas Vélez, Jueza Ponente
*1062 TEXTO COMPLETO DE LA SENTENCIA
Comparece ante nos la Unión Independiente Auténtica de Empleados de la Autoridad de Acueductos y Alcantarillados (UIA o la recurrente) mediante recurso de revisión administrativa presentado el 30 de diciembre de 2003. En el mismo nos solicita la revocación de una Resolución de la Junta de Relaciones del Trabajo de Puerto Rico (la JRT o la Junta) emitida y notificada el 29 de octubre de 2003. En dicha Resolución, la JRT le ordenó a la recurrente que cesara y desistiera de faltar a su deber de justa representación, le restituyera al Sr. Ramón J. Ramírez Rojas (el recurrido o el Sr. Ramírez) el 50% del salario que dejó de percibir durante el período en el que estuvo destituido ilegalmente, y que fijara en sitios visibles a sus empleados unionados copia de un Aviso que relativo a los dos asuntos antes mencionados. 
Evaluados los escritos de las partes, al igual que el derecho aplicable, resolvemos confirmar la Resolución recurrida.
I
Surge de las determinaciones de hechos de la Oficial Examinadora de la JRT, que el recurrido comenzó a trabajar en la Autoridad de Acueductos y Alcantarillados (AAA) en marzo de 1989 como empleado temporero y que para esa fecha la relación entre la AAA y la UIA, quien es la representante exclusiva de los empleados regulares de dicha agencia, se regía por un Convenio Colectivo vigente hasta el 30 de junio de 1993. También se desprende que el Sr. Ramírez ha sido miembro bona fide de la UIA durante todas las fechas pertinentes a los hechos del caso de autos. 
En el 1992, la AAA tuvo la intención de suspender a todos sus empleados transitorios y temporeros por razones económicas. Ante dicha situación, la UIA y la AAA comenzaron negociaciones dirigidas a la preservación del mayor número de empleos posible. Como resultado de dichas negociaciones, el 29 de abril de 1992, las partes acordaron conceder nombramientos de empleados regulares especiales a aquellos empleados que estaban clasificados como no regulares y que, a su vez, tenían más de 1,900 horas trabajadas y acumuladas. Por motivo de dicha estipulación, el 1 de mayo de 1992, la AAA nombró al recurrido como empleado sustituto. 
Posteriormente, el 16 de junio de 1992, la AAA le envió una carta al Sr. Ramírez en la que le notificó que se *1063 le extendería un nombramiento regular especial, sujeto a un periodo probatorio de noventa (90) días. No obstante, el 23 de junio de 1992, el recurrido solicitó la plaza de conserje mensajero, o una similar, en la sección de Conservación y Mantenimiento de Río Piedras. 
Aproximadamente desde julio de 1992, el recurrido tuvo problemas de salud teniendo que acudir a las oficinas de varios médicos y al Hato Rey Community Hospital a recibir tratamiento. Los galenos que lo atendieron le recomendaron, entre otras cosas, descanso en cama. 
Mientras el Sr. Ramírez estuvo ausente por enfermedad, recibió otro nombramiento y se le informó que debía presentarse al área de Operaciones de San Juan en Trujillo Alto. Por motivo de dicho nombramiento, el recurrido le entregó a su supervisora, la Sra. Itzia Ríos y al Sr. Juan Ramos, Presidente del Capítulo de San Juan de la UIA, copia de los exámenes, certificados médicos y recomendaciones de los doctores. El Sr. Ramos se comprometió a llevárselos al Sr. Mangual, quien sería su nuevo supervisor. 
El 18 de agosto de 1992, el recurrido recibió una carta certificada con acuse de recibo de la División de Investigaciones y Asuntos Disciplinarios en la cual se le informó que se encontraba ausente de su trabajo sin la debida autorización desde el 17 de julio de 1992. En dicha misiva también se le concedieron cinco (5) días para que se reportara a su trabajo y justificara sus ausencias y se le advirtió que de no hacerlo, se comenzaría el procedimiento de destitución del puesto según lo establecido en el Reglamento de Personal. 
Durante el mes de agosto del 1992, el Sr. Ramírez intentó regresar a su empleo, pero su supervisor no se lo permitió, ya que se había comenzado el procedimiento de destitución en su contra. 
El 9 de septiembre de 1992, la Sra. María Margarita Irizarry, entonces Directora Ejecutiva de la AAA, le envió una carta al recurrido reiterándole que estaba ausente de su empleo sin la debida justificación desde el 17 de julio de 1992 y que, por ello, se disponía a destituirlo por abandono del trabajo. Sin embargo, le indicó que antes de tomar dicha determinación le concedía 10 días laborables para solicitar una vista informal ante el Subdirector Ejecutivo de Recursos Humanos. Dentro del término concedido, el Sr. Andrés Carrasquillo, vicepresidente de la UIA, solicitó la vista informal establecida en el Convenio Colectivo. 
Así las cosas, el 7 de julio de 1993, no sin antes haberse suspendido en varias ocasiones, se celebró la vista solicitada. Como resultado de la misma, por carta de 30 de agosto de 1993, el Sr. Emilio M. Colón, Director Ejecutivo de la AAA, le informó al recurrido que dejaba sin efecto la intención de acción disciplinaria y que, por tal motivo, debía presentarse a trabajar el 13 de septiembre de 1993 al Centro de Operaciones de San Juan. 
El 28 de septiembre de 1993, el Sr. José Nieves, Director de Área de Personal, le notificó al Sr. Ramírez que lo transfería al puesto de Conserje-Mensajero en el área de pretratamiento con un período probatorio de noventa (90) días calendario. 
Luego de haber cumplido el período probatorio antes mencionado, el 4 de febrero de 1994, el recurrido solicitó, mediante el Procedimiento de Quejas y Agravios del Convenio Colectivo que se le concediera la antigüedad al 10 de junio de 1992. En respuesta a dicha solicitud, el 23 de marzo de 1994, el Sr. Jon R. Pinder Colón, Oficial de Relaciones Laborales de la AAA, le informó por carta al recurrido que su antigüedad procedía desde el 1 de mayo de 1992, pero que ésta no conllevaba el pago retroactivo de índole alguna. En dicho procedimiento no participó la UIA. 
En una fecha posterior a la notificación del cese de su destitución, (30 de agosto de 1993), el Sr. Ramírez le solicitó al Sr. Héctor René Lugo (Sr. Lugo), Presidente de la UIA, que reclamara el pago retroactivo de los salarios que dejó de percibir por su destitución ilegal. En cuanto a este asunto, la Oficial Examinadora determinó que: “Cuando [el Sr. Ramírez] le preguntaba al Sr. Lugo sobre el estatus de su solicitud de que se le *1064 otorgara el pago retroactivo, el señor Lugo le respondía que su caso estaba ante el Comité de Querellas. ” 
No obstante lo anterior, el 13 de octubre de 1995, el recurrido le solicitó al Sr. Lugo, al Sr. Pinder y a la Sra. Elma Rosa León, secretaria del Comité de Querellas de la UIA, que le certificaran si existía alguna querella en la que se reclamara el pago retroactivo de sus salarios dejados de devengar durante el tiempo en que estuvo destituido. Ese mismo día, el recurrido recibió una comunicación de la Sra. León acreditando que para los años 1992 al 1994, no existía en el Registro de Querellas de la Unión querella alguna radicada a su nombre. 
El 7 de febrero de 1996, el recurrido presentó cargos contra la AAA y la UIA ante la JRT. En el cargo contra la UIA, le imputó haber violado el Convenio Colectivo al no haberle representado justa y adecuadamente en la reclamación sobre el pago retroactivo de los salarios dejados de devengar. Por su parte, el cargo imputado a la AAA consistió en que ésta, alegadamente, violó el Convenio Colectivo al no honrarle el pago retroactivo de sus salarios desde el 17 de julio de 1992 hasta el 30 de agosto de 1993. 
Luego de varios trámites procesales entre los que hubo una vista evidenciaría, el 18 de julio de 2001, la Oficial Examinadora de la JRT emitió su Informe. Señaló que como la violación que se le imputaba al recurrido no conllevaba una destitución sumaria, la AAA debió haberle permitido reintegrarse a su empleo una vez éste así lo solicitó. También determinó que la UIA cumplió con su deber de representación hasta el momento en que logró que se dejara sin efecto la destitución del Sr. Ramírez y que cualquier omisión de su deber de representación en cuanto a la controversia surgida sobre la antigüedad quedó subsanada cuando la AAA le reconoció al recurrido la misma desde el 1 de mayo de 1992. No obstante, concluyó que la UIA violó su deber de representación adecuada cuando dejó de presentar la reclamación del Sr. Ramírez respecto a sus salarios dejados de devengar. Finalmente, recomendó que se encontraran incurso tanto a la UIA como a la AAA en prácticas ilícitas del trabajo y que se le concediera al recurrido el pago de los salarios que dejó de percibir y la imposición del interés legal correspondiente sobre dicha cuantía.
El 30 de julio de 2001, la UIA compareció mediante “Escrito para Unirnos a Representación Legal y de Exposición de Excepciones a Informe y Alegato”. Argüyó que la reclamación del recurrente estaba prescrita, por lo que la JRT carecía de jurisdicción para resolverla. En específico, planteó que como la Ley de Relaciones del Trabajo no dispone un término dentro del cual se pueden radicar cargos por prácticas ilícitas de trabajo, se debía aplicar, por analogía, el término incluido en la Ley Federal de Relaciones del Trabajo, conocida como la Ley Taft-Hartley, el cual es de seis (6) meses. En la alternativa, sostuvo que debía aplicar la doctrina de incuria porque el recurrido se cruzó de brazos y tardó demasiado tiempo en presentar el cargo. Finalmente, indicó que la Oficial Examinadora incidió al otorgarle mayor credibilidad al testimonio del recurrido que al del Sr. Lugo, Presidente de la UIA.
El 9 de agosto de 2001, el recurrido se opuso a las excepciones presentadas por la UIA. En su escrito argumentó que el término de seis (6) meses aludido por la UIA no era aplicable, ya que éste únicamente rige en la jurisdicción federal. Sostuvo también que no se cruzó de brazos, debido a que acudió en un sinnúmero de ocasiones a la Unión y allí se le indicaba que estaban esperando por la decisión y que no fue hasta que se enteró que en realidad la Unión no había presentado el caso, que acudió ante la JRT.
Posteriormente, el 22 de octubre de 2003, la JRT emitió la Decisión y Orden recurrida en la cual rechazó los planteamientos de la UIA. La JRT resolvió que la UIA había engañado al recurrido y que éste había presentado los cargos ante la Junta a tiempo, o sea, cuatro meses después de enterarse de que ésta nunca había interpuesto la reclamación. Finalmente, acogió las recomendaciones de la Oficial Examinadora y le ordenó a la UIA lo siguiente: (1) que cesara y desistiera de faltar a su deber de justa representación, particularmente en las reclamaciones de salarios de sus afiliados destituidos ilegalmente, (2) que pagara al Sr. Ramírez el 50% del salario adeudado por el período en que éste estuvo destituido, con los intereses legales al 5.25%, computados a *1065 partir de la decisión, y (3) que fijara en un sitio visible a sus empleados unionados, por un período de 30 días consecutivos, copias del siguiente aviso:

“Nosotros, la Unión Independiente Auténtica de Empleados de la Autoridad de Acueductos y Alcantarillados, sus agentes, sucesores y cesionarios, en cumplimiento de una Decisión y Orden emitida por la Junta de Relaciones del Trabajo de Puerto Rico y con el propósito de llevar a cabo la política pública expresada en la Ley de Relaciones del Trabajo de Puerto Rico, notificamos a todos nuestros empleados que:

1. Cesaremos y desistiremos de faltar a nuestro deber de justa representación particularmente en las reclamaciones de salarios de nuestros afiliados destituidos ilegalmente.

2. Pagaremos al Sr. Ramón L. Ramírez Rojas el 50% del salario adeudado por el período en que éste fue objeto de destitución con los intereses legales del 5.25% computados a partir de la Decisión y Orden. ”
Así las cosas, el 28 de octubre de 2003, la decisión antes mencionada fue enmendada y notificada nuevamente, debido a que no se había incluido en la original las advertencias relativas a los términos para solicitar reconsideración y/o la revisión judicial. 
Inconforme con dicha determinación enmendada, el 18 de noviembre de 2003, la UIA presentó una moción de reconsideración. En dicho escrito, sostuvo que representó a cabalidad los intereses del Sr. Ramírez, que la orden de cese y desista en su contra y el aviso a publicar adolecían de amplitud excesiva y que la Ley de Relaciones del Trabajo de Puerto Rico no tipifica como práctica ilícita de una organización obrera la violación de su deber de justa representación.
Luego de evaluar dicha moción, el 3 de diciembre de 2003, la JRT emitió una Resolución declarándola no ha lugar. Expresó que aunque la UIA representó adecuadamente los intereses del recurrido en el aspecto de la destitución ilegal, no planteó en momento alguno lo relativo al pago de los salarios dejados de percibir durante el tiempo que éste estuvo sin trabajar. En cuanto a la orden de cese y desista, indicó que ésta era válida dentro del ejercicio de su deber de prevenir y remediar la comisión de prácticas ilícitas. Finalmente, concluyó que la jurisprudencia ha establecido claramente que la violación por parte de una unión de su deber de justa representación constituye una modalidad de práctica ilícita de violación del Convenio Colectivo.
Insatisfecha con dicha Resolución, el 30 de diciembre de 2003, la recurrente presentó el recurso de epígrafe. En el mismo plantea que la Junta erró: (1) al declararla incursa en prácticas ilícitas del trabajo por violar su deber de justa representación, a pesar de que ella cumplió cabalmente con éste, (2) al emitir la orden de cese y desista y ordenarle publicar un aviso en lugares visibles por un período de treinta (30) días, ya que ambos adolecen de una amplitud excesiva, y (3) al ordenarle el pago al recurrido del 50% del salario que éste dejó de percibir con el 5.25% de interés, cuando fue el recurrido quien se autoinflingió daño al proceder negligentemente y no procurar la representación de la UIA.
Conjuntamente con su recurso, la UIA presentó una moción solicitando la paralización de la Resolución recurrida. Examinada la misma, un Panel Hermano de este Tribunal paralizó los efectos de la Resolución recurrida y le concedió un término de veinte (20) días al Sr. Ramírez para presentar su posición respecto al recurso.
En cumplimiento con la aludida orden, el 27 de enero de 2004, el recurrido presentó su oposición al recurso. En la misma adujo que las determinaciones de hechos de la Oficial Examinadora, las cuales fueron acogidas íntegramente por la JRT, fueron razonables. Señaló que del expediente se desprende claramente que la UIA debió haber logrado que la AAA le permitiera al recurrido trabajar mientras se dilucidaba su destitución y que no lo hizo, provocando con ello que éste estuviera sin percibir salario por más de un año. También argüyó *1066 que la orden de cese y desista y el aviso a publicarse eran válidos, ya que con ellos la JRT busca que no se cometan las violaciones al Convenio Colectivo que ésta entendió probadas. Por último, añade que la orden de distribuir la responsabilidad entre la AAA y la UIA en cuanto al pago de sus salarios, fue razonable y no medió abuso de discreción.
II
Sabido es que la función revisora de las decisiones administrativas concedidas a los tribunales apelativos se reduce a determinar si la actuación de la agencia está dentro de las facultades que le fueron conferidas por ley y si la misma es legal y razonable. T-JAC v. Caguas Centrum, 148 DPR 70 (1999). De igual manera, los tribunales apelativos deben conceder gran deferencia a las decisiones administrativas en consideración de la vasta experiencia y conocimiento especializado que ésta posee. Rivera Rentas v. A & C Development Corp., 144 DPR 450 (1997).
La Ley de Procedimiento Administrativo Uniforme (LPAU) en su See. 4.5 delimita el alcance de la revisión judicial de las decisiones administrativas. La misma dispone que las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obre en el expediente administrativo. No obstante, las conclusiones de derecho serán revisables en todos sus aspectos. 3 LPRA § 2175. Así pues, un tribunal apelativo tiene el deber de estudiar la totalidad del expediente y examinar si existe evidencia que sostenga la decisión de la agencia o si, por el contrario, es incompatible con ésta. Associated Insurance Agencies, Inc. v. Comisionado de Seguros, 144 DPR 425 (1997). Si la interpretación de los hechos es razonable, los tribunales, de ordinario, deben sostener el criterio de la agencia y no sustituirlo por el suyo. Id. Por el contrario, si el tribunal, luego de un estudio y análisis ponderado, descubre que se infringieron directamente valores constitucionales o la actuación administrativa fue arbitraria o irrazonable, el tribunal puede sustituir el criterio de la agencia por el suyo y revocar el dictamen administrativo. Pérez Vélez v. BPH Motors Corp., 2000 J.T.S. 177.
Así pues, el criterio rector para los tribunales, será la razonabilidad en la actuación de la agencia recurrida. Al finalizar su función revisora, el tribunal está compelido a considerar la especialización y experiencia de la agencia sobre los asuntos y o materias que estuvieron ante su consideración. Por tanto, en el descargo de su función deberá caracterizar entre asuntos de discernimiento estatutario o cuestiones de especialización administrativa.
Por otro lado, es norma conocida que la Ley de Relaciones del Trabajo de Puerto Rico, 29 L.P.R.A. § 61 y ss., reglamenta las relaciones obrero-patronales en general. Por virtud de dicha ley, la Junta de Relaciones del Trabajo es el "tribunal adecuado, eficaz e imparcial" para implantar la política pública y evitar que personas incurran en prácticas ilícitas del trabajo. 29 L.P.R.A. § 62(4). F.S.E. v. J.R.T., 111 D.P.R. 505, 512 (1981). Asimismo, por mandato de ley, “desempeña un deber tutelar fundamental en las relaciones obrero-patronales con miras a implantar la política oficial, prevenir prácticas ilícitas y diseñar remedios apropiados. ” Morales Torres v. J.R.T., 119 D.P.R. 286 (1987).
La Junta tiene jurisdicción exclusiva para evitar y remediar prácticas ilícitas del trabajo. Puerto Rico Telephone Company v. Unión Independiente de Empleados Telefónicos, 131 D.P.R. 171, 187 (1992). Su jurisdicción exclusiva sobre éstas no puede ser afectada por ningún otro medio de ajuste o prevención, excepto en aquellos casos en que la propia Junta ha permitido que se agoten remedios administrativos. Cuando dichos remedios no se agoten, la Junta rehusará asumir jurisdicción, a menos que el agotamiento resulte ser un gesto fútil y vacío, irreal o imposible, o que la Unión falte a su deber de justa representación. Junta de Relaciones del Trabajo v. Autoridad de Compensaciones por Accidentes del Trabajo, 107 D.P.R. 84, 89-90 (1978); Martínez Rodríguez v. A.E.E., 133 D.P.R. 986 (1993).
El Artículo 8 (2) de la Ley de Relaciones del Trabajo establece las prácticas ilícitas de trabajo en que puede *1067 incurrir una organización obrera. En su parte pertinente establece lo siguiente:

“(2) Será práctica ilícita de trabajo el que una organización obrera, actuando individualmente o concertadamente con otros:

(a) Viole los términos de un convenio colectivo, incluyendo un acuerdo en el que se comprometa a aceptar un laudo de arbitraje, esté o no dicho acuerdo incluido en los términos de un convenio colectivo; Disponiéndose, sin embargo, que la Junta podrá declarar sin lugar cualquier cargo en el cual se alegue una violación de este inciso, si el patrono que es parte en el contrato es culpable de una violación en curso del convenio o no ha cumplido con una orden de la Junta relativa a alguna práctica ilícita de trabajo, según lo dispone este subcapítulo.

(b)...”. 

Tanto la Ley Nacional de Relaciones del Trabajo, 29 U.S.C. § 151 y ss., corno nuestra Ley de Relaciones del Trabajo, 29 L.P.R.A. § 61 ss., garantizan, para propósitos de la negociación colectiva, la exclusividad de la representación de los empleados que componen la unidad apropiada a la unión designada o electa por la mayoría de los trabajadores. 29 L.P.R.A. see. 66(1).
A menos que el convenio colectivo suscrito entre el patrono y la unión disponga otra cosa, sólo a la organización obrera se le reconoce la autoridad para poner en movimiento la maquinaria de ajuste de agravios en nombre del trabajador quejoso. Al tenor de lo expresado por el Tribunal Supremo de los Estados Unidos en Humphrey v. Moore, 375 U.S. 335, 342 (1964), la amplia facultad concedida a la unión como representante exclusiva de los trabajadores en la negociación y administración del convenio colectivo, viene acompañada de una responsabilidad de igual magnitud que se conoce como el deber de justa representación. Así, la unión tiene la obligación de hacer un esfuerzo honesto por servir los intereses de todos los miembros de la unidad apropiada sin manifestar hostilidad ni arbitrariedad hacia ninguno de ellos y con buena fe en el ejercicio de su discreción. Id.
Sin embargo, el Tribunal Supremo de los Estados Unidos ha considerado como inaceptable supeditar al empleado al procedimiento de ajuste de agravios o de arbitraje delegado a dicha organización cuando éste alega que la organización obrera lo representó de forma arbitraria, discriminatoria o negligente. DelCostello v. Teamsters, 462 U.S. 15, 163-1641 (1983); Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 566 (1976); Vaca v. Sipes, 386 U.S. 171, 186 (1967). Véase, también Humphrey v. Moore, supra.
Según la trayectoria jurisprudencial federal citada, el empleado puede presentar lo que se ha denominado una "acción híbrida" contra el patrono y contra la unión, lo que, como cuestión formal, comprende dos causas de acción. DelCostello v. Teamsters, supra, págs. 164-165. El reclamo contra el patrono está basado directamente en la sección 301 de la Ley Federal, supra. Se refiere a una alegación de incumplimiento contractual. Por su parte, el reclamo contra la unión por quebrantamiento del deber de justa representación se considera implícito en el esquema de la Ley Nacional de Relaciones del Trabajo.
El Tribunal Supremo federal ha expresado que ambos reclamos son "inextricablemente interdependientes". DelCostello v. Teamsters, supra, pág. 164. Por ello, aunque el empleado puede elegir demandar sólo a la unión, para poder prevalecer en contra de ésta, siempre debe probar tanto que el patrono infringió el contrato como que la unión faltó a su deber de representarlo justamente. Id., pág. 165.
Por nuestra parte, Puerto Rico acogió la doctrina de justa representación según vertida en Vaca v. Sipes, supra, y en Hines v. Anchor, supra. Sobre la conducta de la organización obrera, nuestro Tribunal Supremo expresó lo siguiente:
*1068 “,..[L]a divergencia razonable de criterio respecto a los méritos de una queja per se, no sería suficiente para inferir una violación al trato de buena fe o deducir una conducta arbitraria de una unión. La unión satisface su responsabilidad fiduciaria actuando en relación con la queja de forma diligente y bien intencionada, y cualquier conclusión así adoptada la exime de responsabilidad, no obstante incurriera en error de juicio y a pesar de que posteriormente se determine que, en efecto, la queja en cuestión tenía méritos. Vaca v. Sipes, supra, págs. 192-193. Por otro lado, tampoco eximiría de responsabilidad a la Unión la tramitación y procesamiento de una queja hasta su fin, si la diligencia se despliega sin una adecuada representación o sin proveerse una cabal defensa de los intereses del obrero. Es por ello que a los fines de evaluar la suficiencia de la representación, en casos como el presente, es menester cierta evaluación sobre si la queja era o no frívola. ” (Énfasis nuestro)
Para prevalecer en el reclamo contra la organización obrera no basta con establecer que la queja subyacente es meritoria, sino que es necesario probar, además, que en la administración de la maquinaria de quejas y agravios, la unión, como representante exclusiva y estatutaria del empleado, actuó con hostilidad o arbitrariedad hacia el reclamo de éste.
De otra parte, en cuanto a los remedios que puede conceder la Junta cuando entienda que ocurrió una práctica ilícita del trabajo, el Artículo 9 (1) (b) de la Ley de Relaciones del Trabajo establece en su parte pertinente que:
Si de acuerdo con todas las declaraciones prestadas la Junta fuere de opinión de que cualquier persona, patrono u organización obrera expresados en la querella se ha dedicado o se dedica a cualquier práctica ilícita de trabajo, entonces la Junta manifestará sus conclusiones de hechos y de ley y expedirá orden y hará que la misma se le notifique a dicha persona, patrono u organización obrera, requiriéndole que cese y desista de dicha práctica ilícita de trabajo y tome tal acción afirmativa que permita efectuar los propósitos de este Subcapítulo, incluyendo, pero no limitándose a la reposición de empleados, abonándose o no la paga suspendida, fijando o remitiendo por correo los avisos apropiados, y poniendo fin a convenios colectivos, en todo o en parte, o cualquier otra orden contra tal persona, patrono, parte u organización obrera, que permita efectuar los propósitos de este Subcapítulo. La orden podrá además requerir de tal persona, patrono u organización obrera que rinda informe de tiempo en tiempo, demostrando hasta qué punto ha cumplido con la misma....”. (Énfasisnuestro)
Nuestro más Alto Foro ha expresado que la Junta puede expedir una orden o acciones afirmativas que permitan prevenir que se continúe una práctica ilícita en el trabajo. J.R.T. v. A.M.A., 91 D.P.R. 500, 513 (1964); J.R.T. v. Ceide, 89 D.P.R. 674, 684 (1963). Se ha afirmado que la función de la Junta se caracteriza como reparadora y el remedio que concede debe ser adecuado para la situación que intenta remediar. U.T.I.E.R. v. J.R.T., 99 D.P.R. 512, 526 (1970). La Junta reclama los derechos públicos y es a ésta a quien el legislador impone el deber de evitar las prácticas ilícitas del trabajo. Sus funciones son estrictamente las de realizar los propósitos públicos de la Ley de Relaciones del Trabajo, y sus órdenes van dirigidas a vindicar el interés público y no intereses privados. U.T.I.E.R. v. J.R.T., supra, pág. 528.
La Junta tiene amplia discreción para expedir una orden dirigida a un patrono para "cesar y desistir" de una práctica ilícita de trabajo y requiriéndole tomar acciones afirmativas que permitan efectuar los propósitos de la Ley de Relaciones del Trabajo. Mas, tal discreción está limitada por el requisito impuesto por los tribunales de que dicho remedio sea apropiado y adecuado para la situación que intenta conjurar. U.T.I.E.R. v. J.R.T., supra; J.R.T. v. Ceide, supra, pág. 684.
En cuanto a las aludidas órdenes, el Tribunal Supremo de Puerto Rico indicó en J.R.T. v. Ceide, supra, págs. 692-693, que la persona a quien va dirigida la misma debe conocer exactamente su contenido. Ello, debido a que la violación de dicha orden la expondría a ser castigada por desacato. Al amparo de lo anterior, *1069 señaló que la orden debe responder a la prueba aducida y que, por regla general, ésta no debe ser amplia, debiendo estar relacionada con la conducta ilícita que, en efecto, ocurrió. Sin embargo, expresó que una orden amplia se justifica cuando se desprende de la prueba un curso de conducta que demuestra un menosprecio de la Ley.
Por último, se ha establecido jurisprudencialmente que en los casos en que una unión viola su deber de justa representación, la Junta puede distribuir la responsabilidad final entre el patrono y la propia unión a base de sus respectivas contribuciones al daño sufrido por el obrero. Morales Torres v. J.R.T., 119 D.P.R. 286 (1987); J.R.T. v. Unión de Tronquistas de P.R., 117 D.P.R. 790 (1986). Sin embargo, cuando la violación al convenio colectivo por parte del patrono se deba a actuaciones de la propia unión, ambas entidades “...serán frente al obrero solidaria y mancomunadamente responsables de los daños causados por la conducta combinada de ambos”. Morales González v. J.R.T., 121 D.P.R. 249, 258 (1988).
III
Es una de las contenciones de la recurrente que la JRT incidió al determinar que violó su deber de justa representación, ya que abusó de su discreción al evaluar la prueba.
Luego de examinar minuciosamente el expediente de autos, es menester concluir que las determinaciones de hechos de la Oficial Examinadora están sustancialmente apoyadas por la totalidad del mismo. A tales efectos, del récord se desprende que la recurrente no reclamó, coetáneamente con la reclamación por destitución ilegal del recurrido, los salarios que éste dejó de percibir durante el tiempo que estuvo sin trabajar. También es un hecho probado que, el 13 de octubre de 1995, el Sr. Ramírez le envió una carta al Sr. Lugo, Presidente de la UIA, solicitándole que le certificara por escrito si existía una reclamación respecto a los salarios antes mencionados y qué habían hecho para resolver dicha situación. Más aún, al evaluar los testimonios vertidos en la vista evidenciaría, dicha funcionaría concluyó como hecho probado que cada vez que el recurrido le preguntaba al respecto, éste lo engañaba diciéndole que el caso estaba ante el Comité de Querellas.
Tomando en cuenta lo anterior, concluimos que la JRT actuó de forma razonable y no abusó de su discreción al evaluar la prueba que tuvo ante su consideración. De tal modo, resolvemos que actuó correctamente al determinar que la UIA actuó de forma arbitraria y negligente al no reclamar los salarios a los que el recurrido tenía derecho, violando así su deber de justa representación para con éste.
Por otro lado, la recurrente también impugna la orden de cese y desista y el aviso que la JRT le ordenó publicar porque entiende que adolecen de amplitud excesiva. No coincidimos con su apreciación.
Considerando la doctrina antes mencionada y luego de una lectura de la orden de cese y desista y del aviso antes mencionados, resulta diáfano que éstas son razonablemente específicas y, por consiguiente, no adolecen de amplitud excesiva alguna. La orden de cese y desista en controversia, únicamente informa que la UIA cesará de incumplir con su deber de justa representación en reclamaciones de salarios de sus afiliados destituidos ilegalmente. Esta esencialmente está dirigida a informar de la acción particular incurrida por la recurrente en las circunstancias específicas de este caso. Asimismo, el Aviso a publicarse informa a los demás miembros de la matrícula de la UIA de la orden de cese y desista antes aludida y de la orden relacionada al pago al Sr. Ramírez del 50% de los salarios que dejó de percibir más los intereses. No vemos cómo la información incluida en dicho Aviso puede inducir a los miembros de la UIA a pensar que ésta está incumpliendo con obligaciones que nada tienen que ver con las situaciones particulares de este caso.
Contrario a lo alegado por la recurrente, estas órdenes se encuentran dentro del ámbito de la amplia discreción de la JRT para imponer remedios. Resultan ser apropiadas y adecuadas para la situación que se intenta evitar y, ciertamente, previenen que se repita la actuación ilegal de la UIA.
*1070 La UIA sostiene que la distribución de la responsabilidad por el pago de los salarios que el recurrido dejó de devengar es improcedente, debido a que ella no incumplió con su responsabilidad. Ya determinamos que la JRT actuó correctamente al resolver que la recurrente violó su deber de justa representación para con el recurrido, por lo que no debemos abundar más al respecto. Sin embargo, debemos aclarar que el remedio impuesto por la JRT es un remedio apropiado que ha sido acogido por el Tribunal Supremo de Puerto Rico y está dentro de su poder de hacer valer la política pública de la Ley de Relaciones del Trabajo de Puerto Rico.
Por otro lado, la recurrente aduce que la violación al deber de justa representación no constituye una práctica ilícita de trabajo según éstas se encuentran enumeradas en la Ley de Relaciones del Trabajo. Aunque la Ley de Relaciones del Trabajo de Puerto Rico no incluye específicamente dicha actuación como una práctica ilícita, la jurisprudencia le ha dado el mismo trato a estas violaciones y a las prácticas ilícitas de trabajo. De todos modos, ambas acciones están cobijadas por las leyes federales y estatales de relaciones del trabajo y la JRT tiene jurisdicción exclusiva para atenderlas y para diseñar los remedios que entienda apropiados.
Finalmente, contrario a lo aducido por la Unión, el efecto que acarrearía el cambiar el título de la violación en el caso de autos sería inconsecuente. Ello, debido a que de la parte dispositiva de la Resolución recurrida se desprende que la JRT le ordenó a la UIA cesar y desistir de violar su deber de justa representación y en ningún lugar hace referencia a práctica ilícita de trabajo alguna.
Por todo lo anterior, concluimos que la JRT actuó correctamente al resolver que la UIA violó su deber de justa representación para con el recurrido y al ordenarle que cesara y desistiera de incurrir en dicha conducta. Asimismo, actuó correctamente al determinar que le correspondía pagar el 50% de los salarios que el recurrido dejó de percibir, más los intereses, y que la recurrente publicara un aviso informando su decisión. No se cometieron los errores señalados por la recurrente.
IV
Por los fundamentos antes expresados, se confirma la Resolución emitida y notificada por la Junta de Relaciones del Trabajo de Puerto Rico el 29 de octubre de 2003.
Lo acordó y manda el Tribunal y lo certifica la Secretaria Interina del Tribunal.
Mildred Ivonne Rodríguez Rivera
Secretaria Interina del Tribunal de Apelaciones
ESCOLIOS 2005 DTA 46
1. Según la propia Resolución, el restante cincuenta por ciento (50%) de los salarios que el Sr. Ramírez dejó de devengar, lo deberá pagar la Autoridad de Acueductos y Alcantarillados. Apéndice de la recurrente, pág. 70.
2. Apéndice de la recurrente, pág. 38.
3. Apéndice de la recurrente, págs. 1-6.
4. Apéndice de la recurrente, pág. 38.
5. Apéndice de la recurrente, pág. 7.
6. Apéndice de la recurrente, pág. 8.
7. Apéndice de la recurrente, págs. 12-14, 39-40.
*1071 8. Apéndice de la recurrente, pág. 40.
9. Apéndice de la recurrente, pág. 19.
10. Apéndice de la recurrente, pág. 41.
11. Apéndice de la recurrente, pág. 20.
12. Apéndice de la recurrente, pág. 21.
13. Apéndice de la recurrente, pág. 22.
14. Puesto número 049-029-3. Apéndice de la recurrente, pág. 23.
15. Apéndice de la recurrente, págs. 26-27.
16. Apéndice de la recurrente, pág. 29.
17. Apéndice de la recurrente, pág. 43.
18. Apéndice de la recurrente, pág. 43.
19. Determinación de hecho número 45. Apéndice de la recurrente, pág. 44.
20. Apéndice de la recurrente, págs. 30-31.
21. Apéndice de la recurrente, pág. 32.
22. El cargo contra la UIA es el # CA-96-03. Apéndice de la recurrente, pág. 33.
23. El cargo contra la AAA es el # CA-96-04. Apéndice de la recurrente, pág. 34.
24. Apéndice de la recurrente, págs. 35-58.
25. Apéndice de la recurrente, págs. 59-62.
26. Apéndice de la recurrente, págs. 63-67.
27. A la AAA le ordenó básicamente lo mismo. La única diferencia consiste en que la falta de ésta consistió en la práctica ilícita de trabajo de violar el Convenio Colectivo y en que el interés legal que tiene que pagar es el 1%. Apéndice de la recurrente, págs. 70-74.
28. Apéndice de la recurrente, págs. 75-76.
29. Apéndice de la recurrente, págs. 79-89.
30. Apéndice de la recurrente, págs. 90-92.
31. Artículo 7(a), 29 L.P.R.A. sec. 68(a).
32. 29 L.P.R.A. § 69(2)(a).
33. J.R.T. v. U.T.I.G., 110 D.P.R. 237, 244-245 (1980)
34. 29 L.P.R.A. § 70(l)(b).
*1072 35. Apéndice de la recurrente, pág. 30.